# CASES DETERMINED

## *January Term, 1874.*

THE STATE OF WISCONSIN ex rel. the Attorney General, on complaint of WILLIAM FARRELL, vs. CONKLIN.

BY-LAWS OF PRIVATE CORPORATION: *Rules of construction — Effect of practical construction by usage of the society.*

1. A by-law of St. Raphael's Benevolent Society (a corporation created by a law of this state) provides that "the annual meeting for the election of officers shall be held on the first Sunday of July in each year, and the monthly meeting shall be held on the first Tuesday of each month at half past seven o'clock, P. M." *Held,* that although the ordinary construction of these words, on first view, would probably be that the words, "at half past seven o'clock, P. M.," define the hour of the *annual* meeting, as well as that of the *monthly* meeting, yet the words are not inconsistent with an intention on the part of those who employed them to define only the hour of the *monthly* meeting.

2. In a case of ambiguity in a by-law of a private corporation, like the society in question, the court will not give a positive construction thereto, *opposed* to any consistent practical construction which it may have received from the members of the society, the same not being unreasonable, nor contrary to the principles of justice or morality, or to any rule of law or public policy.

3. In questions arising upon such by-laws, as in those arising upon written agreements between individuals, if the language is unambiguous, it is *for the court* to determine the intention of the parties therefrom; if the language is doubtful, and the ambiguity such that the intention is to be ascertained from extrinsic evidence, the construction is generally a question of fact *for the jury.*

4. If a written contract between individuals provided for the doing of a particular act on a certain day in each year, and then specified an hour of day, which, from the words used and the context, might or might not have been fixed for the performance of *that act*, and essential to its validity; in such a case, upon a controversy arising after the lapse of several years, parol evidence would be admissible to show that the hour named had been disregarded by the parties in each preceding year, in doing the act, and that the same had been performed and accepted at some other hour as within the contract; and such fact would constitute the highest possible evidence of the original understanding of the parties, intended to be expressed by such contract. Per DIXON, C. J., *arguendo*.

5. In *quo warranto*, to determine defendant's title to the office of treasurer of St. Raphael's Benevolent Society, his answer alleges "that on Sunday, the 6th day of July, 1873, at a regular meeting of said society, held in their rooms in the city of Madison, which meeting had that day been called and notified to be held at that time and place by the priest of St. Raphael's Church at Madison, at the close of the morning service, *the same as every other annual meeting had been called and notified since the organization of said society*, he was duly elected treasurer of said society," etc., etc. It appears from the complaint that at least three annual meetings of said society for the election of officers had been held before the election in question. *Held*, on demurrer to the answer,

(1) That while the averments of the answer as to the usage of the society are not as direct, positive and certain as the rules of good pleading require, yet, as the intention of the pleader to state a usage, and that the prior elections had been so held, is plain, and the language not fairly susceptible of any other construction, the answer must be treated, under the liberal rule of the code, as averring such a usage.

(2) That the number of years during which elections are averred to have been so held is *sufficient to establish a usage* of the kind alleged.

(3) That such usage, if proven, will show a *valid practical construction*, by the society itself, of the by-law in question, in respect to holding the annual meeting and election.

Action in the nature of a *quo warranto*, commenced in this court, in August, 1873, to try the title of the defendant, *Conklin*, to the office of treasurer of the St. Raphael's Benevolent Society, a corporation in this state existing under an act ap-

proved March 3, 1870. The complaint avers that said society
was organized under said act, at Madison in this state, in 1870,
and has ever since existed at that place; that by said act it
was endowed, among other things, with power to enforce for
its proper government a constitution and by-laws not inconsist-
ent with the constitution and laws of the United States or of
this state; to take, hold and convey real and personal property
not exceeding in value $25,000; to elect such officers as the
condition and circumstances of the society might require; to
prescribe their terms of office, etc., etc.; that by said act the
objects of the society were declared to be, "to afford relief to
its members in sickness and distress, and to contribute means
for defraying burial expenses of its deceased members, also to
extend such aid as its resources will admit, to those who are
not members of this society, and are in distress;" and that
"by virtue of said incorporation, and long prior to the transac-
tions hereinafter related, the said society duly and legally en-
acted and ordained its constitution and by-laws for its proper
government, under which it has since been, and now is, acting
and governed." The complaint then sets forth the names of the
offices of said society as provided by the constitution, including
that of treasurer; and the powers and duties of the treasurer as
defined by said instrument. It then avers that by said constitution
it is enacted that there shall be an annual meeting for the elec-
tion of officers, and a regular meeting once in each month for the
transaction of business; and that by the second article of the
by-laws of the society, it is enacted as follows: "The annual
meeting for the election of officers shall be held on the first
Sunday in July of each year and the monthly meeting shall
be held on the first Tuesday of each month at half past seven
o'clock P. M." It then avers, in substance, that since the sev-
enth of July, 1873, the defendant has usurped and unlawfully
held and exercised, and still does usurp, etc., the office of treas-
urer of said society; that he has obtained and keeps possession
of the moneys of said society, and the books of account per-

taining to the office of treasurer, which he refuses to surrender, on demand, to the complainant, *Farrell*, the duly elected treasurer of said society; that he (*Conklin*) claims to have been elected treasurer of said society at a meeting claimed to have been holden as the annual meeting thereof, on the first Sunday of July, 1873; that said alleged meeting was not a regular meeting, nor the annual meeting of said society, prescribed by the constitution and by-laws; that it was holden about the hour of twelve o'clock, noon, of said day; that it was not called, officially or otherwise, by any officer of said society; that no previous notice of the holding thereof was given; that neither the president, vice president nor secretary of the society was present, and no secretary *pro tempore* was elected by said meeting, and no official record thereof was made; that on the day and at the hour appointed by the by-law aforesaid, to wit, on the the first Sunday, being the 6th day of July, 1873, at seven and a half o'clock, P. M., at the hall of the society, there was held the annual meeting prescribed by the constitution and by-laws, at which the annual election of officers of said society was regularly held; that at such election the complainant, *Farrell*, was unanimously chosen, by ballot, treasurer of said society; and that he thereafter gave bond, with sureties as required, approved by the president and secretary, and thereby became and ever since has been rightfully entitled to hold and use said office.

A printed copy of the constitution and by-laws of the "St. Raphael's Benevolent Society" was attached to the complaint as a part thereof. In such printed copy, the second by-law appeared as above printed, except that there was a comma immediately after the word "year."

The defendant, by his answer, alleges "that on Sunday, the 6th day of July, 1873, at a regular annual meeting of said society, held in their rooms in the city of Madison, which meeting had that day been called and notified to be held at that time and place by the priest of St. Raphael's church at

Madison, at the close of the morning service, the same as every other annual meeting had been called and notified since the organization of said society, he was duly elected treasurer of said society, at least two-thirds of all the members thereof, and a legal quorum, being present and participating in said election;" that at the same time and place, all the other officers of the society were duly elected to serve for the ensuing year; that defendant afterwards gave bond, as required by the constitution and by-laws of the society, and the same was accepted and approved, etc., etc. The answer further avers that the pretended election of the complainant as treasurer was void for certain reasons, which need not be here stated.

A motion for judgment against the defendant, on the ground that the answer was frivolous, was made and argued before DIXON, C. J., at chambers, in October, 1873, and was by him denied. See 33 Wis., 685. The attorney general, in behalf of the state, then demurred to the answer as not stating a defense.

*H. S. Orton* and *Wm. F. Vilas*, for the demurrer. [No brief on file.]

*Smith & Lamb,* contra, contended, 1. That the words "at seven o'clock P. M.," in the second by-law, could not be treated as referring to the *annual* meeting of the society, except by a strained construction. 2. That the *usage* of the society in regard to the holding of its annual meetings is sufficiently alleged in the complaint, which should receive a *liberal* construction, with a view to substantial justice between the parties. *Spence v. Spence,* 17 Wis., 455; Wait's Code, 290, 291. 3. That elections will not be set aside for mere irregularities, if held with due notice, and fairly conducted. *People v. Peck,* 11 Wend., 604; *Juker v. Comm.,* 20 Pa. St., 484; *Ewing v. Filley,* 43 id., 384; Cooley's Con. Lim., 618; *People v. Cook,* 8 N. Y., 67; *S. C.,* 14 Barb., 259; *Clifton v. Cook,* 7 Ala., 114; *Trueheart v. Addicks,* 2 Tex., 217; *Dishon v. Smith,* 10 Iowa, 212; *Attorney General v. Ely,* 4 Wis., 420; *State v. Jones,* 19 Ind., 356; *Gorham v. Campbell,* 2 Cal., 135; *Whipley v. McKune,* 12 id., 352;

*Bourland v. Hildreth,* 26 id., 161; *People v. Higgins,* 3 Mich., 233; *People v. Bates,* 11 id., 362; *Taylor v. Taylor,* 10 Minn., 112; *People v. McManus,* 34 Barb., 620; *Day v. Kent,* 1 Oregon, 123; *Piatt v. People,* 29 Ill., 54; *People v. Runkle,* 9 Johns., 157, 158; *Fry v. Booth,* 19 Ohio St., 25.

DIXON, C. J.   This is a demurrer on the part of the state by the attorney general, who is represented by counsel for the complainant, *Farrell,* to the same answer upon which the motion for judgment for frivolousness was made before the writer at chambers, in October last, which motion was denied on the 17th of November following, for reasons stated in the opinion filed on that day.   Leave having been asked and obtained to demur to the answer, this demurrer has been filed and served, and brought to argument before the court, and now remains to be decided.   But two questions are necessary to be, and will be, considered in the determination of it: First, as to the proper construction of article 2 of the by-laws of the corporation of which the complainant and defendant claim respectively to be the duly elected treasurer; and, Second, as to the sufficiency of the answer as a pleading or statement of the existence of a usage respecting the time of day for holding, and place and manner of notifying, the annual meeting for the election of officers of the society, which is fixed by the same article for the first Sunday of July of each year.

Before proceeding to the discussion of these questions, it seems proper that it should first be observed, that, as indicated by some remarks found at and near the close of the former opinion, the questions here presented, or one of them, namely that respecting the construction of the by-law, was then considered by the members of the court, and an opinion, verbal merely, expressed upon it to counsel on both sides.  The views thus stated were formed and made known under an erroneous impression that such was the desire of counsel both for the complainant and defendant.   Those views were to the effect

that the hour, "at half-past seven o'clock P. M.," named in the
by-law, applied to and regulated the time of day for holding
the annual meeting for the election of officers, as well as that
for the holding of the monthly meeting provided for by the
same article of the by-laws. Encouraged by such expression
of opinion, counsel for the complainant have no doubt filed
this demurrer; and it is the cause of no little discomfort and
regret on our part, that subsequent argument and more thor-
ough consideration have led to a modification of the views then
orally communicated. We are disquieted and sorry that the
views then declared should have misled counsel, or put the
parties, or either of them, litigating before the court, to any ad-
ditional trouble, expense or delay. It is the misfortune of
suitors that the mistakes and uncertainties attending all other
human affairs enter also into the decisions and acts of courts
and judges, sometimes retarding the progress of justice, and at
others, it may be, interrupting and defeating it altogether. We
can only acknowledge our regrets for past errors and mistakes,
and move on in the line of present duty.

Article 2 of the by-laws, which we are required to construe,
reads as follows: "The annual meeting for the election of of-
ficers shall be held on the first Sunday of July in each year,
and the monthly meeting shall be held on the first Tuesday of
each month at half-past seven o'clock P. M." The punctuation
is that of the by-law itself, that is, with merely a comma after
the word "year."

We said on the former occasion, that the ordinary grammat-
ical construction was, that the hour named in the final words
referred to and governed the time of day for holding the annual
meeting as well as the monthly meeting. That conclusion is
sharply criticised, but we are not yet satisfied that it was wholly
incorrect. *Prima facie,* if we may be allowed the expression, we
should still say, such would be and is the ordinary grammat-
ical construction. On first view, most readers would, we think,
give the language that construction, and say that such was the

meaning and intention of the writer. On first view, and in the absence of any controversy or dispute, or averment of facts, leading to minute and critical inquiry and examination, most courts would, we believe, so construe and hold.

But the question presented on this argument is not one as to the ordinary meaning and construction of the words on first view only, but of their meaning and construction, and the ideas intended to be conveyed by them, as fixed and determined by the words themselves, beyond any fair and reasonable doubt or controversy. This, it is plain to see, is a very different question from that formerly considered. It is a question whether the words as used are in any manner doubtful and ambiguous, or capable of different meanings, according as the parties employing them may or may not have intended to fix the hour for holding the annual meeting for the election of officers. It is a question whether it is clearly and unmistakably certain, from the language employed, that they intended to fix the hour for holding the latter meeting. The question may be put in another form. Are the words used clearly and certainly inconsistent with the supposition that the parties adopting them did not intend to fix the hour of the day for holding the annual meeting? In our judgment, it cannot, on the words themselves, be surely and incontrovertibly said that the parties did intend to fix the hour for holding that meeting. All that can be positively and beyond doubt affirmed respecting the hour mentioned in the by-law is, that the framers did intend to and did fix that time for the holding of the monthly meeting. Aside from the intention, so clearly expressed, to fix the time of day for the monthly meeting, it cannot with certainty be affirmed, with respect to the hour named, that it was also intended to regulate the annual meeting provided for in the by-law. Presumptively, such may have been the intention, but the point is one which must be admitted to be fairly open to debate and controversy. A correct writer or speaker might have used the same words without intending to fix the hour for holding the

State ex rel. Attorney General vs. Conklin.

annual meeting. The language being, therefore, ambiguous, and the intention of the parties adopting it in doubt, the next question arising is as to the proper mode of settling such doubt. Is it the province of this court to construe, settle and determine, as it would do in case of a like ambiguity presented by the words of an act or law passed by the legislature of this state?

Taking, as their premise, that the by-laws of the society are the laws of the corporation for the government of its members and transaction of its business, as much as the acts of the legislature are the laws of the state by which its affairs are regulated and the conduct of its citizens prescribed and governed, counsel for the complainant assume and argue that it is the duty of this court to interpret, explain and apply the by-laws in the same manner and upon the same principles that it interprets, explains and applies the statute laws of the state in cases of ambiguity and doubt. This we regard as an erroneous assumption on the part of counsel; and in this also, we think, consisted our own error on the former occasion. We were wrong in attempting to give a positive judicial construction to the by-law as against any consistent, practical construction which it may have otherwise received at the hands of the members of the society. The proposition that the constitutions and by-laws of these private corporations and chartered societies are in a general sense laws to them and their members, is undoubtedly correct; but it is not true, we think, in cases like the present, that they are laws in the unqualified sense of being the proper subjects of judicial interpretation, the same as the laws of the state enacted by its legislature. The differences in respect of the practical constructions of such constitutions and by-laws, in themselves doubtful, which they may have received at the hands of the corporators or members, and of the practical construction which may have been given to a doubtful statute of the state, are such as upon little reflection will readily be suggested. The form of government of the corporation or society

is such, that, so far as it is self-controlling or capable of making and enforcing its own laws, the same power or body which enacts, likewise interprets, and then executes those laws. We have, in such case, the lawgivers themselves expounding and determining the meaning of their own laws. Unlike the state, or other governmental body under our system, the society has no separation of powers into legislative, judicial, and executive — one department for making, another for interpreting, and the third for executing its laws. If, therefore, in the interpretation of general or public law, great attention is paid by the courts to practical constructions given by the executive or legislative departments, it seems to follow in cases like this, there being nothing in the by-law or construction given, either unreasonable, against the principles of justice or morality, or contravening the rules of law or sound policy, that the practical construction should govern and be absolutely authoritative whenever the question is judicially presented. This may seem to be a new principle in the construction of the by-laws of this and other similar corporations, but it strikes our minds with so much force as to its truth and correctness, that we cannot but yield assent to it as that which should govern in all such cases.

Our view respecting the function and office of the court in cases like this, no question being made that the by-law is unreasonable, against law, or contrary to public policy, is, that the court must construe and give effect to the by-law in the same manner and upon the same principles that it would construe and give effect to an agreement in writing made and entered into between private individuals. The rules respecting the construction of contracts and agreements in writing are well understood. If the language of the contract is plain and unambiguous, it is a question of law, for the court, to determine the intention of the parties from the words used. If, on the other hand, the language is doubtful, or the intention not clearly expressed, and the ambiguity is such that it may be explained by other evidence, or if the meaning of the terms used

is to be ascertained and determined by extrinsic proof, then the construction is usually a question of fact, for the jury. These rules are sufficiently illustrated by several decisions which have been made in this court. *Ganson v. Madigan*, 15 Wis., 144; *Prentiss v. Brewer*, 17 id., 635; *Rockwell v. Ins. Co.*, 21 id., 548; *Merriam v. Field*, 29 id., 598.

In the case of a written contract, the meaning of which is in doubt, we suppose it is not to be denied that evidence of the practical construction put upon it by the parties themselves may sometimes be received for the purpose of showing their intention, or what they understood it to mean. Such evidence, it is true, may not be resorted to except where the words used are ambiguous, but there we understand that it is receivable. *Orton v. Noonan*, 27 Wis., 292–3. If a written contract, the performance of which was to extend through a number of years, provided for the doing of a particular act on a certain day in each year, and then specified an hour of day which, from the context and words employed, might or might not have been for the performance of that act and essential to its validity, in such case, upon controversy arising after the lapse of three or four or five years, if it appeared that the hour named had been disregarded by the parties in each preceding year in doing the act, and that the same had been performed and accepted at some other hour as within the contract, this would constitute the strongest possible evidence of the original understanding of the parties, and of what they meant by the contract at the time of entering into it. We can not doubt that in such case, such evidence would be admissible in explanation of the ambiguity; and, if admissible there, then we think it should be received for the same reasons and upon the same principle in a case like the present.

Upon the facts set forth in the answer, therefore, supposing the pleading to be in this respect sufficient, we are of opinion that the usage there stated may be shown in explanation of the by-law, and to establish the intention of the society or its mem-

bers in enacting it. It may be proved by way of establishing the practical construction put upon the by-law, which, as we have seen, if established, must prevail over the judicial construction which might otherwise be given. Contrary to the rule which obtains in the construction of general or public laws, which does not permit the introduction of parol or other extrinsic evidence of this nature to aid in solving doubts or removing ambiguities arising upon the language employed by the legislature, the proof may here be admitted for that purpose. Supposing, therefore, the pleading to be sufficient, the facts admitted by the demurrer bind the court to the practical construction of the by-laws given by the members of the society themselves, in acting upon it.

And we are inclined rather to place our decision upon this ground, instead of that of mere usage, though we are by no means prepared to say that the latter is unavailing. It is not, as has already been seen, the case of a usage set up in contravention of or to control a by-law, but the opposite, or a usage not in conflict with the by-law.

We come now to consider the second question above stated, namely, as to the sufficiency of the answer of the defendant to show a usage or practical construction given by the members of the society to the by-law in question. That part of the answer averring the defendant's title to the office, and the usage, reads as follows: "And the defendant further answering says, that on Sunday, the sixth day of July, A. D. 1873, at a regular meeting of said society held in their rooms in the city of Madison, which meeting had that day been called and notified to be held at that time and place by the priest of St. Raphael's church at Madison at the close of the morning service, *the same as every other annual meeting had been called and notified since the organization of said society*, he was duly elected treasurer of said society, at least two-thirds of all the members thereof, and a legal quorum, being present and participating in said election," etc.

It is objected that the answer does not in terms, and with that certainty the rules of pleading require, allege that a usage existed, or that the annual elections or any elections had theretofore been notified and held in that manner, but that it is inferential and argumentative merely, not going to the point of positive averment. The answer is certainly not without some fault in the particular named, and, were it not for the liberal rule of construction established by the code, might be held bad on this ground. But as the intention of the pleader to state a usage, and that prior elections had been so held, is very plain, and as the language employed is fairly susceptible of no other meaning or construction, the court is of opinion that the defect is cured by the statute.

It is also objected that the answer is defective in not showing that sufficient time had elapsed for the establishment of a usage. No particular length of time is required for that purpose. *Lamb v. Klaus*, 30 Wis., 94. The complaint avers that the society was incorporated and duly organized in March, 1870. It likewise avers "that under and by virtue of said incorporation, and *long prior* to the transactions hereinafter related, the said society duly and legally enacted and ordained its constitution and by-laws." It thus appears from the pleadings that at least three annual meetings for the election of officers had taken place prior to that at which the defendant claims to have been elected to the office of treasurer, which was time enough for a usage to spring up and become established as well as to give a practical construction to the by-law.

Some other arguments were adduced, and other clauses of the constitution and by-laws referred to by counsel on both sides, in support of the positions respectively taken by them. Particular attention is not here given to those arguments, because in our judgment they are not sufficient to change or modify the views above expressed. We do not think the construction of the by-law is aided or can be varied by the other clauses referred to, or considerations urged, but are of opinion

that the question rests and must be determined on the words of the by-law or article alone which is above quoted.

The demurrer to the answer must be overruled, but without costs to either party.

*By the Court.*—— It is so ordered.