W. C. Brown, Assignee of John Hall v. Creston Ice Company, L. J. Camp, Receiver, Appellant.

Services of vice-president of corporation: quantum meruit: *Knowledge of officers and Stockholders.* Where the vice-president of a corporation performs services for the company which are not incumbent upon him by reason of his office, and without any contract requiring such services, but with knowledge of officers and stockholders, he is entitled to recover the value of the services.

*Appeal from Union District Court.*—Hon. H. M. Towner, Judge.

Saturday, April 13, 1901.

This is a proceeding for the allowance of a claim filed with the receiver by John Hall. The sole contention before us is whether an item of $413.75 for services rendered by said Hall to the defendant company should be allowed. As to other items of the claim and of defendant's counterclaim there is no dispute. The case was referred to Hon. M. L. Tample as referee, who, after a most careful and thorough investigation, reported in favor of the plaintiff on this disputed item; and, defendant's objections to the report being overruled, judgment was rendered approving the report. Pending the case, Hall assigned his claim to plaintiff Brown. Defendant appeals.—*Affirmed.*

*Sullivan & Sullivan* for appellant.

*Hugh M. Fry* for appellee.

Given, C. J.—I. The facts found by the referee are not disputed, and, in so far as they relate to the item in controversy, are substantially as follows: In 1883 the defendant company was incorporated with a capital stock of 1,000 shares of $25 each, 924 of which were issued; John

Hall owning 10 and his wife, Ella, 422, of said shares. The business of the corporation was cutting, storing, and selling ice at Creston, and maintaining a pleasure ground, and was conducted for a time sucessfully by a president, vice president, secretary, treasurer, and superintendent, with John Hall as general manager at a fixed salary of $500 a year. After the services of a general manager were dispensed with, the business was unprofitable. About the first of the year 1892 dissension had grown up among the stockholders, and no attempt was made to carry on the business successfully. No one taking any interest in the business, Mr. Hall, as a stockholder and representing the stock of his wife, went actively to work to push the business of the corporation, devoting his time thereto, and doing a large and profitable business; the sales of ice amounting to $4,987, and the collections to about $4,050. The directors and stockholders accepted the results of his extraordinary labor, and applied the proceeds to the payment of debts of the corporation and to the declaring of a dividend, knowing all this time that John Hall expected and claimed compensation for his services. During 1893 Hall met with less success, the sales only amounting to between $600 and $700, of which about $582.40 was collected. The company's ice house burned late in 1893, and thereafter no business was done, except as necessary to protect the property of the company. Mr. Hall rendered a correct account of all his proceedings. The referee says: "I am much relieved in the matter of passing upon the amounts claimed to have been expended for the care of teams, hunting and caring for elk, etc., by the concessions made by counsel for the receiver, who say that all these amounts have been paid, concede that they were proper, and contest only the two items of account, one for $400 personal compensation for work done in 1892, and the other for $200 for personal compensation for work done in 1893." The referee reported as his conclusions of law as follows: "I conclude, under the well-settled principles of the law, that

claimant can recover nothing for the performance of such duties as pertained to the offices he held in the corporation, to-wit, that of director and vice president, in the absence of a contract with the board of directors; but upon the state of facts found by me this question does not arise, for the labor performed by claimant was outside of the duties usually pertaining to such office. I take the case of *Bank v. Elliott,* 55 Iowa, 104, approved in 61 Iowa, 681,—*Carruthers v. Mineral Springs Co.,* to be the rule, at least in Iowa, that, when suit is brought on the *quantum meruit* by a person against a corporation for work done and accepted, even though the claimant be an officer of the corporation, he may recover, if the labor performed be outside the labor or performance of duties necessarily entailed upon that office." He recommended that the claim of Hall in the sum of $406.97 be allowed, with costs.

II.  Appellant's counsel state their contention as follows: "We now insist the general manager of a corporation, nor any other person, cannot receive compensation for services performed, unless he was employed by a board of directors of such corporation, and the compensation agreed on prior to the performance of any services. To our mind, this matter has been passed on by the supreme court of our state as well as others." *Bank v. Elliott,* 55 Iowa, 104, is cited, and we think it fairly conclusive on the question then under consideration. It will be observed that this claim is not based upon contract, but upon a *quantum meruit.* Elliott was vice president of the plaintiff bank, and sought to show an agreement between the directors that he should receive a yearly salary of $2,000. He also sought to show another agreement, under which he claimed the right to recover. He sought to recover for the performance of the ordinary duties of vice president. This court said: "First, We understand the rule to be, when an officer of a corporation performs the usual and ordinary duties of his office as defined by the charter or by-laws, he cannot recover compensation therefor unless it has been so especially agreed.

He cannot, in such case, recover what the services are rea-
sonably worth"—citing cases.  "Second.  It was immaterial
what was said as to salaries before the corporation was organ-
ized.  The corporation, not being in existence, could not be
bound by what was said or agreed upon.  The fact that the
services were performed after the corporation was organized
can make no difference, unless there was an agreement by
the corporation to pay therefor.  The mere performance of
service is not sufficient"—citing additional authorities.  If
plaintiff's claim rested upon alleged contract, what we have
quoted would be conclusive against the claim, but, as we have
said, it is upon the *quantum meruit*.  The court further
says in the case as follows: "Third.  It may be con-
ceded that for  extraordinary services such as do not
pertain to the office, there may be a recovery although it has
not been so specially agreed.  It would, therefore, follow
that proof of the character of the services should have been
admitted if there had been such allegation in the pleading
filed by the defendant.  But the only stated ground of
recovery was that the services were performed by the
defendant as vice-president.  It was not alleged that
they did not pertain to the  office, or that they were ex-
traordinary.  The only fair construction of 'the pleading is
that the defendant sought to recover compensation for per-
forming the duties of vice-president of the defendant.  The
proposed evidence was therefore properly rejected, and the
jury rightfully directed to find for the plaintiff."  Mr. Hall
had ceased to be general manager, and the services performed
were extraordinary, and were not incumbent upon him as an
officer or stockholder.  He performed them with the knowl-
edge of the officers and stockholders, and to their advantage
and that of the company.  The rules pertaining to usual and
ordinary services do not apply.  "Where services are per-
formed by a person for a corporation, and the directors are
aware that such services are being done, and the directors
receive the benefit, the corporation is liable upon implied
*assumpsit.*"  *Hooker v. Bank,* 30 N. Y. 83.  "Where a cor-

poration has virtually ceased to exist, any of its officers may make proper arrangements and do proper things to carry on the business." *Murray v. Vanderbilt,* 39 Barb. 140; *Bartlett v. River Corp.,* 151 Mass. 433 (24 N. E. Rep. 780). There was no error in approving the report, and the judgment is therefore AFFIRMED.