### NATIONAL STATE BANK v. SANDFORD FORK & TOOL COMPANY ET AL.

[No. 19,253.   Filed May 28, 1901.]

APPEAL AND ERROR.—*Special Finding.—Evidence.*—A finding will not be disturbed on the evidence where there is any evidence which, when considered alone, is sufficient to sustain it. *p. 15.*

SAME.—*Conclusions of Law.—Exception.*—An exception to the conclusions of law concedes that the facts upon which the conclusions were based are correctly found. *p. 15.*

National State Bank *v.* Sandford Fork, etc., Co.

Corporations.—*Mortgages.— Execution by President.*—Where the directors of a corporation specifically instructed the president to manage the finances and prudential affairs of the company according to his best judgment, and to execute any contract or instrument deemed by him necessary or prudent in the conduct of the company's affairs, and thereafter acquiesced in all the things performed by him under such instruction, such action was as effectual in authorizing the president to execute a mortgage as the formal adoption and entry upon the minutes of the corporation of a resolution to that effect. *pp. 15-17.*

Same.— *Mortgages.— Execution by President.*— Under §5054 Burns 1894 the board of directors of a corporation may authorize the president of such corporation to execute a mortgage at a regular meeting of the board of directors, or by their separate assent, or by any other mode of doing such acts by individuals. *p. 17.*

Chattel Mortgages.—*Failure to Record.—Fraud.*—A chattel mortgage will not be held fraudulent as to creditors because it was withheld from record for four months, the mortgagor reëxecuting it at substantially ten-day periods, the last mortgage being placed on record, where the mortgages were omitted from record because of the promise of the mortgagor to pay the same and repeated in each period of ten days, and there was no agreement between the parties to withhold same from record. *pp. 17-19.*

From Vigo Circuit Court; *James E. Piety,* Judge.

Action by National State Bank of Terre Haute against Sanford Fork & Tool Company and others to set aside mortgages as fraudulent against creditors. From a judgment in favor of defendants, plaintiff appeals. *Affirmed.*

*F. A. McNutt, J. G. McNutt* and *E. F. Williams,* for appellant.

*S. B. Davis* and *S. R. Hamill,* for appellees.

Hadley, J.—This controversy is over a fund of $19,000 which resulted from the agreed sale of goods alleged to have been mortgaged by the appellee Sandford Fork & Tool Company to the appellee Vigo County National Bank. This is the second appeal, *National State Bank v. Vigo County Nat. Bank,* 141 Ind. 352. There are two mortgages, between them covering all the personal goods of the tool company, and each purporting to secure an indebtedness aggregating $28,000. The validity of these two mortgages is the only

question presented, and it arises under an exception to the conclusions of law. The material facts exhibited by the special finding follow: The appellee Sandford Fork & Tool Company is a corporation organized under the laws of this State, and was doing a manufacturing business in the city of Terre Haute. Appellant and appellee bank were and are doing a general banking business in the same city. September 27, 1887, Robert Nixon was elected president of the tool company, and on February 4, 1890, Willard Kidder, who was at the time vice-president of appellee bank, was elected, and succeeded Nixon as president and continued in said office till the commencement of this suit. The finances and prudential affairs of the tool company from the election of Nixon as president in September, 1887, continuously to the commencement of this suit were managed and conducted through and by the president of said company, who was at all times held out to the public by the board of directors as the chief executive officer thereof, and during all of said time the president made the contracts for the company, executed notes, drew checks, and signed whatever instruments were necessary to be signed to borrow money and carry on the business of the company, all of which acts were acceded to and acquiesced in by the board of directors; and when Kidder was elected president, February 4, 1890, the board of directors instructed him to manage the finances and prudential affairs of the company according to his best judgment, and to execute all papers and instruments deemed necessary thereto, which instruction Kidder carried out to the full approval and acquiescence of the board of directors. No order or resolution of the board of directors affecting the powers and duties of the president was entered of record in the minute books of the corporation, but a by-law provided that "all the instruments obligating the company shall be signed by the president and attested by the secretary;" on November 14, 1889, the tool company was indebted to appellee Vigo County National Bank by divers notes amount-

ing to $43,000. Hudnut, president of the bank, had been instructed by his board of directors to demand security for a part of such indebtedness; on the date last named, upon his demand, the tool company, by Nixon, its president, attested by its secretary, executed to the bank two mortgages, one covering all and the other a part of the personal goods of the company, and both securing two notes, one for $12,000 and one for $15,000. At the time of the execution of these mortgages it was agreed that the same should be withheld from record until the last of the ten days allowed by law for recording the same. On the same day (November 14th) Hudnut, president of the appellee bank, loaned the tool company upon its note $3,000 of its individual funds, and neither demanded, nor received, then, nor subsequently, any security, or payment thereon, except the dividend paid by the receiver afterwards appointed. On December 13, 1889, appellee bank loaned the tool company $2,500, and again, on January 31, 1890, loaned it $2,500, on the company's unsecured notes, and on the last named date the further sum of $6,000, on its note secured by shares of its capital stock of the face value of $7,500, which said three notes are still unpaid except the dividend paid thereon by the receiver; that between the dates of November 14, 1889, and March 27, 1890, appellee bank continued to trust and give credit to the tool company, and within that period discounted its commercial paper and acceptances to the amount of $26,000; that after Kidder was elected president (February 4, 1890,) to the commencement of this suit, in conducting the business of the tool company, he received and disbursed on behalf of the company $60,000, $30,000 of which he paid out for labor and supplies, and $30,000 on the unsecured indebtedness of the company, no part of which was paid on the indebtedness secured by the mortgages in controversy; that from and after November 14, 1889, to the commencement of this action, the tool company was in embarrassed circumstances and was unable to meet all its demands and obliga-

tions as the same fell due; that the managing officers and directors of the tool company, and the president and directors of appellee bank, during all the time running from November 14, 1889, to the commencement of this suit, believed that said company was solvent and that it would continue to be a going concern and would be able to pay all its obligations in full; on and in the time intervening between November 14, 1889, and April 25, 1890, the original two mortgages were reëxecuted between the same parties fifteen times at substantially ten days' periods, on about the same property and to secure the same indebtedness, except that on March 18, 1890, the mortgage note for $15,000 was paid, and the indebtedness amounting to $16,000 remaining unsecured November 14, 1889, and which had been extended by renewals, was introduced into and secured by the mortgages executed on March 27, 1890; there was no agreement between the parties when the first mortgages were executed, and none at any time prior or subsequent thereto, that said mortgages should be renewed every ten days; none of the mortgages executed prior to April 25, 1890, were recorded, but the two executed upon the last named date were duly recorded in the recorder's office of the county on May 3, 1890.    The mortgaged property and its locations were specifically described in the several mortgages; it was left in the possession of the mortgagor, and was not labeled, or particularly set aside to the mortgagee, but was left in the same places where located at the time of the first mortgages, except 1,700 dozen finished forks and hoes, described only in the first mortgages, were removed to another warehouse; without the knowledge or consent of the mortgagee the mortgagor filled some orders out of the finished mortgaged product and manufactured some of the mortgaged raw material, but in each instance restored what was taken away with goods of like kind and value; the mortgages in controversy were executed in good faith to secure a *bona fide* indebtedness therein described, and without any fraudulent

intent to cheat, hinder, or delay any creditor of the tool company. After November 14, 1889, and before the commencement of this suit, the tool company became indebted to appellant for money loaned in the sum of $18,552.

Upon these facts the court below found the law to be with appellee bank, that the mortgages executed to it by the tool company on April 25, 1890, are valid and subsisting mortgages, and that the fund derived from the agreed sale of the mortgaged property now in the hands of a trustee should be turned over to said appellee to be applied upon the indebtedness secured thereby.

Appellant's counsel argue, in a general way, that the special findings are not sustained by the evidence, but they fail to point out any fact stated in the findings that has no evidence in its support. It is, in substance, admitted that there is a conflict in the evidence upon all material matters, and a conflict is sufficient to preclude this court from a consideration of the question. The rule is firmly settled that where there is evidence for and against a proposition, this court will not undertake to weigh it—that must be done by the lower court, who is in a situation to be the more accurate judge—and when a verdict or finding has any evidence in its support, which, when considered alone is sufficient to sustain it, this court will not disturb it. *Schmidt* v. *Zahrndt,* 148 Ind. 447; *Sweeney Co.* v. *Fry,* 151 Ind. 178. For the purpose of this decision, then, we must regard the special finding as exhibiting the absolute truth; and the whole truth with respect to the facts of the case. Appellant's exception to the conclusions of law concedes that the facts are correctly found. *Phelps* v. *Smith,* 116 Ind. 387, 393.

Appellant insists, first, that, in the absence of a specific authority from the board of directors, the president of the tool company had no power to execute the mortgages in controversy, and that they are therefore void. It is true the findings show that there was no resolution of the board, and

no verbal warrant specifically authorizing the execution of the mortgages, but it is shown that for years before the mortgages were made the president acted as the chief executive officer of the company, and executed all notes, checks, contracts, and instruments in writing necessary to be executed in conducting the business of the company, and that during all the time the directors held the president out to the public as such executive officer and acquiesced in all of his acts as such; and furthermore it appears that when Kidder was elected and installed as president, on February 4, 1890, he was specifically instructed by the board of directors to manage the finances and prudential affairs of the company according to his best judgment, and to execute any contract or instrument deemed by him necessary, or prudent, in the conduct of the company's affairs; and that the directors subsequently ratified, and acquiesced in, all the things performed by him under such instructions.

This course of conduct by the directors was as effectual in authorizing the president to execute the mortgages as the formal adoption and entry upon the minutes of the corporation of a resolution to that effect. It was said by this court in this case on its former appeal, *National State Bank* v. *Vigo Nat. Bank,* 141 Ind. 352, at p. 355. "The board of directors may invest him [the president] with authority to act as the chief executive officer of the company; this may be done by resolution or by acquiescence in the course of dealing and manner of transacting the business of the corporation. * * * When a contract is made in the name of a corporation by the president, in the usual course of business, which the directors have the power to authorize him to make, or to ratify after it is made, the presumption is that the contract is binding on the corporation until it is shown that the same was not authorized or ratified." See authorities cited in case referred to.

In this case the authority of Kidder, as president, to make the mortgages, does not rest upon the usual course of

business, nor the ratification or acquiescence of the board, but it had behind it the express authority of the board, though verbally given, in the form of an instruction, to execute any sort of contract or instrument deemed by him wise in the exercise of his best judgment. This authority the board had the power to confer. §5054 Burns 1894, §3854 R. S. 1881 and Horner 1897; *National State Bank* v. *Vigo Nat. Bank,* 141 Ind. 352, 355. And it was conferable at a regular meeting of the board of directors, or by their separate assent, or by any other mode of doing such acts by individuals. *Richardson* v. *St. Joseph Iron Co.,* 5 Blackf. 146, 33 Am. Dec. 460; *Hamilton* v. *Newcastle, etc., R. Co.,* 9 Ind. 359; 17 Am. & Eng. Ency. of Law, 55, and cases there collated.

It is further contended that the withholding of the several mortgages from record from time to time for five months is fraudulent *per se* as to appellant, who extended the tool company credit for the full amount of its claim during the pendency of the unrecorded mortgages without knowledge of their existence, and that the finding of the court that the same were withheld from record without any previous agreement to do so, and without any fraudulent intent, should be disregarded.

The withholding of a valid mortgage from the public records until it loses its force as a preference can of itself injure no third person; neither can the reëxecution of such a mortgage, any number of times, be harmful if such original and renewal executions are made in good faith and without any agreement or understanding that the same shall be done; that is to say, if each instance of the execution and withholding of a mortgage from record until it becomes ineffectual by lapse of time is independent of every other similar transaction, is *bona fide,* and rests upon its own facts without being influenced by any prior, or intended to influence any subsequent, act of like character, the law neither condemns nor imputes fraud.

Vol. 157—2

It is the keeping of a mortgage or other preference, executed by an insolvent debtor, concealed, and from the public records under an agreement or understanding to do so for some definite period, or until the happening of some contingency, and for the purpose, or which has the effect of giving the debtor a fictitious financial standing, that the law denounces. In such cases the preference will be set aside in favor of those who are misled thereby into giving credit to the debtor under the belief that such preference did not exist. *Hutchinson* v. *First Nat. Bank,* 133 Ind. 271, 286, 36 Am. St. 537; *American, etc., Bank* v. *McGettigan,* 152 Ind. 582, 588, 71 Am. St. 345; *Blennerhassett* v. *Sherman,* 105 U. S. 100, 26 L. Ed. 1080; *Walton* v. *First Nat. Bank,* 13 Col. 265, 22 Pac. 440, 16 Am. St. 200, 5 L. R. A. 765; *Folsom* v. *Clemence,* 111 Mass. 273; *Stewart* v. *Hopkins,* 30 Ohio St. 502, 529.

In this case it is expressly found as a fact that there was neither an agreement nor fraudulent intent. Conceding what appellant claims, that the finding of good faith should be disregarded, and his contention is still without foundation. The absence of such finding would not enable us to say as a matter of law that the failure to record the several mortgages was fraudulent as to creditors. Under our statute, §6649 Burns 1894, §4924 R. S. 1881, and Horner 1897, the question of fraud is one of fact, and where fraud is essential to a cause of action it must be found as a fact in a special finding and not left to be inferred as a matter of law. *Phelps* v. *Smith,* 116 Ind. 387; *Hawkins* v. *Fourth Nat. Bank,* 150 Ind. 117, 124; *Fulp* v. *Beaver,* 136 Ind. 319; *Morgan* v. *Worden,* 145 Ind. 600; *Hutchinson* v. *First Nat. Bank,* 133 Ind. 271.

It was said in the Hutchinson case at page 286: "In none of the cases cited by counsel has the mere failure to record an instrument within the time fixed by statute, whether such failure was in pursuance of a previous contract, or by mere neglect, been held sufficient, of itself to avoid such instru-

ment.   *   *   *   We are satisfied that an arrangement for the withholding of a mortgage from record is not of itself sufficient to justify a court in holding, as a matter of law, such mortgage fraudulent and void as to creditors, either existing or subsequent."

If the fact was as testified by Mr. Hudnut, that the recording of the several mortgages was omitted by his reliance upon the promises of the officers of the tool company, repeated in each period of ten days, that the debt should be paid within the particular period, and the failure to record was solely the result of grace and confidence, the act merits neither legal nor moral condemnation.   And such is the legal effect of the findings.

. Appellant also argues that the two mortgages executed on November 14th, the two executed on April 25th following, and all those intervening, constituted in fact but two continuing instruments from the first date, and are void as to third persons for omission of registry under §6638 Burns 1894, §4913 R. S. 1881 and Horner 1897.   The findings do not support the argument.   They disclose no such intent. They show that from first to last there were some changes made in the mortgaged property, and some in the indebtedness secured; that from November 14th to April 25th, the periods between the making of mortgages exceeded ten days at least four times, running from eleven to twenty-one days; that on April 25th the mortgages in suit were executed, and recorded on May 3rd as prescribed by the statute.   No other mortgages were recorded.   No claim is made under any other, and if the parties saw fit to treat all previous instruments as void, and of no effect, in the absence of fraud, the law will not interfere.

The further contention that the findings show a secret trust is not maintainable for reasons already indicated.

We find no error in the record.   Judgment affirmed.