(Nos. 22148, 22149, 22150.—

CHARLES H. JOY *et al.* Plaintiffs in Error, *vs.* DITTO, INC. *et al.* Defendants in Error.

*Opinion filed April 21, 1934—Rehearing denied June 6, 1934.*

CATTELL & WALDRON, (VERNON W. FOSTER, of counsel,) for plaintiffs in error.

KNAPP, BEYE, ALLEN, COCHRAN & CUSHING, (WILLIAM BEYE, R. C. STEVENSON, and WALTER H. VELDE, of counsel,) for defendants in error.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiffs in error, Charles H. Joy, Mary G. Joy, Charles H. Joy, Jr., and A. L. Joy, filed in the circuit court of Cook county their bill for accounting against defendant in error Ditto, Incorporated, and its officers and directors, alleging that certain of its officers, Guy H. Abbott, Joseph M. Cheney and H. M. Henderson, received and retained, in violation of law, certain secret bonuses over and above their respective "substantial, known, fixed annual salaries." The bill prayed that restitution be made and that the amount so restored be distributed as dividends, or, in the alternative,

that the individual officers so receiving such bonuses be required to restore to the individual complainants their proportionate share of the amount received. Prior to the entry of the decree in the cause it was stipulated that payment, if any, should be made direct to the individual complainants. A decree was entered in accordance with the prayer of the bill, directing that defendants pay to complainants, in the proportion in the decree specified, the following amounts: Abbott $12,675.88, Cheney $5407.56 and Henderson $1969.79. Separate appeals were prayed from the decree to the Appellate Court and the causes were there consolidated for hearing. That court reversed the decree of the circuit court, with directions in each case to dismiss the bill of complaint as to the appellant. The consolidated causes are here on writ of *certiorari*.

Plaintiffs in error (hereinafter referred to as complainants) base their case on the theory that Abbott, Cheney and Henderson (hereinafter referred to as defendants) were officers and directors of the corporation and as such received certain bonus compensation over and above their fixed salaries without antecedent authority from the board of directors, and that such bonuses were therefore illegally paid to them. The defense is based on the proposition that none of the compensation received by Abbott, Cheney or Henderson was paid for services as officer or director of the corporation; that all their compensation, consisting of fixed salary and a percentage of net earnings, was paid them for services not official in character and outside the duties imposed upon them as officers and directors; that such services were rendered and the compensation was paid under valid, binding contracts of employment entered into between them and the corporation by its chief executive, and that the contracts were made pursuant to the power of the chief executive and in accordance with the corporation's customary method of doing business and were ratified and approved by the board of directors and the stock-

holders. It is also contended that the complainants are barred by *laches*.

The corporation was organized in 1910 under the laws of West Virginia. The evidence shows that it was at first unsuccessful. Some time during that year one J. A. Joy (who, it appears, is in no way related to the complainants,) and T. W. Robinson took over the operation of the company and re-organized it, putting in money to insure success. J. A. Joy was made president. The corporation thereafter gained steadily in its business success but paid no dividends until 1917. From 1920 to the time of filing the bill herein it showed remarkable success, and during the ten years from 1920 to 1929 paid dividends ranging from 16 per cent to 90 per cent of the par value of the capital stock. For this period it paid an average yearly dividend of 42.3 per cent. J. A. Joy acted as president from 1910 to 1928, at which time he became chairman of the board, vested with the same powers, however, as president. J. A. Joy and Robinson were directors from 1910 until the filing of this suit. Together they owned 72 per cent of the stock. Complainants own about 12 per cent of the stock.

It is shown without dispute in the evidence, that from the time he became president it was the fixed custom of Joy and Robinson, with acquiescence on the part of the board of directors and without the participation of the board therein, to determine all questions of policy relating to business, make all employment contracts and determine compensation to be paid thereunder and to have general supervision and management of the business and affairs of the company. On October 21, 1924, the board of directors amended the by-laws to provide for the appointment by the board of an executive committee, consisting of the general manager of the company as chairman and two other members of the board of directors. The duties of the executive committee, as provided by this amended by-law,

were (1) to pass on all loans, (2) purchase all securities, and (3) authorize all contracts, at all times when the board of directors is not in session. J. A. Joy thus became chairman and Robinson and Abbott were appointed members of this executive committee, and they thereafter so acted until the beginning of this suit. The evidence shows, without dispute, that all contracts of employment were made by J. A. Joy. The only compensation that was ever fixed or considered by the board of directors was the compensation of J. A. Joy as president and later as chairman of the board, and a provision for a fee of $10 per meeting for directors attending meetings of the board. It is also shown, without dispute, that the matter of the salaries to be paid to employees of the corporation was left entirely in the hands of the committee, without reference to or action by the board of directors.

The connection of each of the defendants with this corporation began as an employee engaged by Joy. Abbott became also an officer in 1912 and a director in 1920. Cheney became also an officer in 1920 and a director in 1922. Henderson became also an officer in 1923 and a director in 1928. The offices filled by the defendants were vice-president, secretary and treasurer. Abbott became president in 1928 when J. A. Joy became chairman of the board. Their compensation as heads of departments was from time to time increased by Joy and Robinson. The record shows that this was done in accordance with the increasing value and responsibility of their services and the increasing business of the corporation. Abbott became general manager, Cheney sales manager and Henderson production manager. The evidence shows that when they became officers and directors no increase of salary was given them, that their duties as such were negligible, and that they received no salary as officers of the corporation.

From time to time these defendants, as well as other heads of departments, requested an increase in salary.

J. A. Joy, upon consideration of this matter with T. W. Robinson, decided upon a plan of compensation whereunder these heads of departments would receive a fixed salary and in addition thereto a percentage of the net profits of the business. This plan was put into effect and was continued up to the time of the bringing of this suit. It first applied only to Abbott, later to six department heads and still later to nine, of whom defendants were the only officers or directors of the corporation. It is shown in the record that the reasons for such arrangement were two: (1) That such an arrangement would tend to interest the department head in economical operation of his department and in the increase of profits; and (2) it avoided carrying large fixed liabilities of the corporation for salaries. The spreading of this plan to other department heads was occasioned by demands from them for salary increases, together with attempts of competitors to get some of these men away from the corporation. The plan adopted and followed was to fix, in addition to the stated salary of such department heads, a certain percentage of the net profits. The fixed salary and the percentage of the net profits to be received in addition thereto were fixed at the close of each year for the following year. The bonus or percentage was fixed as a part of the total compensation which these defendants and other heads of departments were to receive for their services as such department heads for the following year. The only claimed exception to prospective fixing of participation in net earnings occurred in 1925 concerning Abbott's compensation for that year. Abbott testified that early in that year he applied to Joy for an increase in such percentage and that Joy stated that he would attend to it, but because of absence of Joy, he, Abbott, did not learn what percentage of net profits he was to receive for 1925 until December of that year. This, however, does not show a substantial departure from the plan of fixing compensation in advance.

The record does not show when the percentage for Abbott was, in fact, fixed by Joy and Robinson. This record clearly shows that throughout all the term involved in this suit the business was conducted first under the management of J. A. Joy and Robinson, and later under the management of those two, with Abbott, as members of the executive committee. This was in direct accord with the authorization of the board. Joy received a salary of $10,000 per annum fixed by the board of directors. Robinson received no salary at all, and no officer other than Joy received any salary as such officer. A director received $10 for each meeting of the board attended by him. Neither Joy nor Robinson received a bonus.

Complainants have assigned numerous errors, which, however, may be grouped under one question: May a director or officer of a corporation receive a bonus, in addition to a stated salary, without a resolution of the board of directors previously adopted fixing the sum? They say, first, that the president had no authority to make contracts for bonuses without the sanction of the board of directors; second, that the bonuses were secret, and complainants, as stockholders, knew nothing about them, and such bonuses were a fraud on complainant stockholders. Defendants reply that the rule of law that a corporation may not pay compensation to directors or officers as such, except on an antecedent resolution of the board of directors or by a by-law, has no application to this case; that such rule applies, as it indicates, only to officers and directors when acting as such and to duties incident to the official position of officer or director, and that such are not the facts here.

The West Virginia Code, under which this corporation was organized, (chap. 53, sec. 53,) provides: "The board of directors may, subject to the provision of law and the by-laws, appoint such officers and agents of the corporation as they may deem proper, and also an executive committee from their own number, and may prescribe the du-

ties and compensation of such, but there shall be no compensation for services rendered by the president or any director as such, unless it be allowed or authorized by the stockholders."

It is the rule in this State, and generally, that a director of a corporation, as such, is not entitled to receive a salary unless the same is previously authorized by by-laws or by resolution of the board of directors. Payment of a salary greater than that so authorized is voidable at the suit of a stockholder not participating therein. (*Brown* v. *DeYoung,* 167 Ill. 549; *Ellis* v. *Ward,* 137 id. 509; *Bloom* v. *Vehon Co.* 341 id. 200; *Gudin* v. *Cement Co.* 79 W. Va. 83.) It will be observed that this rule, as well as the West Virginia statute, relates to salaries paid to officers or directors "as such," and in this case, if the services rendered for which compensation here was paid were not services required of them as officers or directors but were services rendered as employees of the corporation, then complainants may not recover simply because the amount of compensation was not fixed by the board of directors, since under such circumstances the defendants were not acting in an official capacity. That an officer or a director of a corporation may also validly contract with the corporation to serve it as an employee and be paid for that service is no longer an open question in this State. The rule that an officer or a director of a corporation cannot receive compensation unless such is provided by the by-laws or resolution of the board of directors before the services are rendered has an exception now as fully established as the rule (4 Fletcher's Ency. "Corporations," sec. 2739,) that where such officer or director has performed services clearly outside the scope of his duties as such officer or director, at the instance of someone of the corporation having general authority over its affairs and under a promise of payment for such services, he is entitled to receive pay therefor. (*Stevens* v. *Industrial Com.* 346 Ill. 495; *Chicago Macaroni Co.* v. *Boggiano,*

202 id. 312; *Gridley* v. *Lafayette, Bloomington and Mississippi Railway Co.* 71 id. 200; *Cheeney* v. *Lafayette, Bloomington and Mississippi Railway Co.* 68 id. 570; *Rockford, Rock Island and St. Louis Railroad Co.* v. *Sage,* 65 id. 328.) This is also the rule in other jurisdictions. *Pew* v. *First Nat. Bank,* 130 Mass. 391; *Fitzgerald & Mallory Construction Co.* v. *Fitzgerald,* 137 U. S. 98, 34 L. ed. 608; *Watts* v. *West Virginia Southern Railway Co.* 48 W. Va. 262, 37 S. E. 700; *Henry* v. *Railroad Co.* 27 Vt. 435; *Brown* v. *Ice Co.* 113 Iowa, 615, 85 N. W. 750; *Gumaer* v. *Cripple Creek Co.* 40 Colo. 1, 90 Pac. 81; *McCarthy* v. *Water Co.* 111 Cal. 328, 43 Pac. 956.

Counsel say, however, that these were secret bonuses and that the defendants were paid large fixed salaries as such officers and the bonuses were increases in the form of gratuities, and, having been given without authority of or knowledge on the part of the board, are illegal. As we have stated, the record, without dispute, shows that the percentage of these bonuses was fixed for each succeeding year in addition to the stated salary. They all formed a part of one contract of employment for that year and may in nowise be considered as gratuities given to officers or directors.

But complainants argue that under the by-laws the power to determine compensation was vested solely in the board of directors. Section 2c of article 5 of the by-laws provided that the board of directors shall have power "to appoint, and at their discretion to remove or suspend, any subordinate manager, officer, assistants, clerks and servants, permanently or temporarily, as they may from time to time think fit, and to determine their duties and fees and from time to time change their salaries or emoluments, and to require security in such instances and in such amounts as they think fit." Section 1 of article 6 is as follows: "The president or board of directors shall have power to appoint such officers as may be deemed necessary, who shall

have such authority and shall perform such duties as may from time to time be prescribed by the board. Officers elected by the board shall also hold office until the next annual meeting of the board of directors and until their successors are elected and qualified. All such officers, agents and employees shall hold office during the pleasure of the board or of the officer appointing them." In addition, as we have shown, the amendment of 1924 gave the power of management of the corporation into the hands of the executive committee. Section 6 of article 2 of the by-laws provided: "The president * * * shall have the general powers and duties of supervision and management usually vested in the office of a president of a corporation." In addition to these provisions of the by-laws the evidence shows, without dispute, that J. A. Joy and Robinson, and later with the assistance of Abbott, throughout practically the entire existence of the corporation, controlled all the contracts of employment, and that at least once a year the board of directors and stockholders ratified this management by their votes.

It is a rule well settled that the interpretation of ambiguous by-laws of a private corporation is a function lying within the province and the power of the board of directors. Courts will recognize and adopt a construction of ambiguous by-laws placed upon them by the corporation itself. (*Waite* v. *Homestead Building Ass'n,* 76 W. Va. 431, 85 S. E. 637; *State* v. *Conklin,* 34 Wis. 21; I Fletcher's Ency. "Corporations," pp. 1020-1039.) It is also a rule of law that when a corporation allows certain of its officers to manage its business it must be responsible for their acts, unless it is affirmatively shown that these acts were unauthorized. (*Anderson* v. *Wallace Lumber Co.* 30 Wash. 147, 70 Pac. 247; *Bank* v. *Tool Co.* 157 Ind. 10, 60 N. E. 699.) It is clear in this case that for twenty years the board of directors acquiesced in the methods followed as herein detailed. John J. Flanigan,

a witness called for complainants, stated that from 1910 to 1928 he was a member of the board of directors, and that there never was any discussion at the directors' meetings which he attended, about any compensation paid to anybody. This was the only witness for the complainants other than the defendants or officers of the corporation. While this witness was at the time of the hearing connected with a competing concern and showed some feeling over the fact that he had been discharged from the defendant corporation, it is clear from his testimony that it was the practice, always followed, to leave all employment and fixing of salaries to Joy and Robinson, who later included Abbott. We are convinced, therefore, that the contention of complainants that J. A. Joy was without authority to make the contracts here complained of is without basis either in the facts of this case or in law.

It is also contended that these bonuses were secret and outside the knowledge of the directors and stockholders and therefore fraudulent. Complainants allege fraud as a basis of recovery. It is an elementary rule of law that he who alleges fraud must prove it. It was stipulated that nothing on the subject appeared in the minutes of the meeting of the board. There is, however, no evidence in this record that these complainants did not know all about these bonuses. In fact, none of them testified. It was incumbent upon them to prove such secrecy if it were true. They offered Flanigan as their witness and cross-examined the defendants and J. A. Joy and Robinson in an endeavor to establish that these bonuses were secret. Flanigan testified that he never heard bonuses discussed at any meeting attended by him. An examination of the testimony of the witnesses other than Flanigan discloses, without dispute, that these bonuses were purposely kept in a separate ledger to avoid knowledge on the part of clerks in the accounting department as to the percentage given to each of the recipients of bonuses. This was done for the reason

that it was not thought advisable that one should know what the other was getting. The evidence shows that this rule was likewise observed as to salaries. This court is of the opinion that the officers in charge of the business of this corporation had a legal right, in the exercise of their judgment as to the best method of conducting the business, to keep from the various employees information as to what other employees were paid. The evidence of the success of this concern indicates that no mistake was made in that regard. All the evidence in the record on the subject is that the plan was most valuable to the success of the corporation.

It is also shown that at each December meeting of the board of directors there was voted, by resolution, a Christmas bonus, made applicable to such employees as were not receiving other bonuses. So far as complainant C. H. Joy, who was also a director, was concerned, this resolution was notice to him that other bonuses were being given. It also appears that at the end of each year's audit the total of the amount of bonuses was shown, either under the item "Accrued royalties and bonuses" or "Compensation paid on net profits." These audit reports were open to stockholders. All the testimony in the case, aside from that of Flanigan, concerning notice, is that the directors all knew that bonuses were given as a part of salary, though none knew and none inquired as to what these bonuses were. The officers of the corporation were in nowise bound to impart to the stockholders more information than was given by the audit. The stockholders were receiving handsome dividends each year and each year ratified the method of conducting the business used by the corporation's officers. Complainant C. H. Joy was a director for twenty years. We are not permitted to hear from him whether he knew of the practice to give bonuses as a part of salary, for he did not testify, but it is evident from the testimony of at. least two witnesses that on one occasion when the

Christmas bonus was adopted he inquired what was meant by the reference to others who were receiving bonuses, and that he was informed that numerous employees of the organization received bonuses, and that he appeared satisfied. This is, in effect, all the evidence on this question.

This case is decided solely on the facts in this record and does not come within the rule upon which complainants rely.

The Appellate Court was right in its judgments in these combined cases, and its judgments will be affirmed.

*Judgments of Appellate Court affirmed.*

Mr. Justice DeYoung, dissenting.

Mr. Justice Shaw took no part in this decision.