**Lush'us Brand Distributors, Inc., Appellee, v. Fort Dearborn Lithograph Company, Appellants.**

**Gen. No. 43,360.**

Opinion filed November 20, 1946; Rehearing opinion filed January 8, 1947. Released for publication January 28, 1947.

COBBEY & BRUSSELL, of Chicago, for appellants; J. A. COBBEY, JAMES R. FRANKEL and ABRAHAM W. BRUSSELL, all of Chicago, of counsel.

BOBB, SPOERRI, BOURLAND & HARRIS, of Chicago, for appellee; JAMES F. SPOERRI and HERMAN C. NAGEL, both of Chicago, of counsel.

MR. PRESIDING JUSTICE LEWE delivered the opinion of the court.

This is an action for an accounting and injunction restraining defendants Fort Dearborn Lithograph Co., a corporation, hereinafter called "Lithograph Company," John N. Adler, Rose Adler Fedorka, Edward Guarina, and Affiliated Food Products Company, a domestic corporation, from using the trade names "Lush'us" and "Tru-Valu." Defendant Adler filed a counterclaim seeking dissolution of the plaintiff corporation.

The cause was referred to a master and in conformity with the findings and recommendations contained in his report a decree was entered in favor of the plaintiff corporation, dismissing the counterclaim filed by defendant Adler and enjoining defendants from manufacturing, using, displaying, or selling labels bearing the names "Lush'us" or "Tru-Valu," and that an accounting be made to plaintiff corporation of all moneys derived from the manufacture, use and sale of such labels. Defendants appeal.

The evidence shows that about 1927 Edward A. Novak and his brother Victor were engaged in the wholesale grocery business known as Lush'us Products Company and used the name "Lush'us" as descriptive of food products sold by them. In 1929 they organized a domestic corporation which used the same name and label. In 1931 the corporation was adjudged a bankrupt. A trustee was appointed and the assets were subsequently sold. At the trustee's sale Edward and

Victor Novak purchased the goodwill, rights to trade-marks, and a large number of labels bearing the word "Lush'us." Afterwards Victor Novak sold all of his interest in the labels to his brother Edward. In July 1935 Lithograph Company entered into a written contract with Edward Novak, doing business as "Lush'us Brand Distributors," which provided in substance as follows: that Lithograph Company was to furnish Novak with labels bearing the trade name of "Lush'us Brand" at prices specified in the contract; that all labels shipped by Lithograph Company to Novak's customers were to be invoiced at an increase of 20 per cent in excess of the prices fixed in the agreement; and that 20 per cent represented a brokerage commission to Novak and was to be remitted to him on the 15th day of each month.

The contract further provided that in the event Novak was unable to sell labels already lithographed and varnished within a reasonable time Lithograph Company was empowered to dispose of the labels on hand in any manner it saw fit. It appears that Novak failed to obtain orders in sufficient quantities to satisfy Lithograph Company. When the sales of labels lagged, defendant Adler, who was secretary of Lithograph Company, feared that the large stock of labels in the hands of Lithograph Company might become obsolete. In order to facilitate the sale of the labels, defendant Adler and Novak organized the plaintiff corporation in 1936, the stock of which consisted of 100 shares of a par value of $10. The stock was equally divided between Adler and Novak. It was also agreed that the latter's wife, Violet Novak, was to hold one share of her husband's stock. The consideration for the issuance of the capital stock of plaintiff corporation was a trade-mark valued at $1,000. Control of the plaintiff corporation since its organization was vested in Novak and his wife who constituted two of the three directors, Adler being the third. All of the business of plaintiff

corporation was conducted from the office of Lithograph Company by defendant Adler. Labels were shipped directly to plaintiff's customers by Lithograph Company which retained 80 per cent of the billing and credited 20 per cent to plaintiff corporation.

On December 11, 1937, Edward A. Novak and the plaintiff corporation entered into a written contract which provides in substance that Edward A. Novak, as licensor, is the owner of trade-mark number 268003 covering the use of the word ''Lush'us''; that plaintiff corporation, as licensee, is engaged in the business of printing and distributing ''said trade-marks'' for use among food distributors and is fully equipped to manufacture labels and other forms of advertising matter, and is desirous of obtaining a license to use said trademark; that the licensor, Edward A. Novak, hereby grants to the licensee, plaintiff corporation, the right to use trade-mark number 268003 for a period of 5 years from the date of the contract; that the licensee agrees to pay Novak 50 per cent of all of its net profits derived from the use of the trade-mark, payments due under the contract to be made on the first day of each month; and such payments shall be accompanied by statements showing the manner in which the said net profits were calculated.

Thereafter, on June 25, 1938, a new Federal Food, Drug and Cosmetic Act, known as the Copeland Act, was enacted, which became effective on July 1, 1940. This Act provided, among other things, that food labels must bear the name of the manufacturer, packer, or distributor of the food products which they designate.

The record discloses that early in 1939 Novak and Adler conferred concerning the effect of the Copeland Act upon the business of the plaintiff. Adler consulted with the Department of Agriculture in Washington and was informed that the plaintiff, Lush'us Brand Distributors, Inc., could not be recognized as a distributor of foods under the provisions of the Copeland Act.

Thereafter Adler suggested to Novak that the charter of the plaintiff be amended to authorize an issue of preferred stock and that it distribute the stock to the customers of the plaintiff, all of whom were food distributors, in order to comply with the provisions of the Copeland Act. This suggestion and others proposed by Adler were rejected by Novak on the ground that it might result in shifting control of plaintiff corporation from Novak to defendant Adler.

Subsequently, in January 1940, Adler proposed that Novak accept royalties for the use of the trade names "Lush'us" and "Tru-Valu" and a minimum monthly salary. While Adler and Novak were discussing the terms of the new contract and re-organization of plaintiff corporation, Adler was informed by his lawyer that an examination of the files in the Patent Office at Washington disclosed that trade-mark number 268003 had been canceled ten years before. Several months after acquiring this information defendant Adler incorporated "Affiliated Food Distributors, Inc.," a domestic corporation, and began selling "Lush'us" and "Tru-Valu" labels to plaintiff's customers. These labels had been printed and intended for use of the plaintiff corporation. Adler obliterated the name of the plaintiff corporation upon the labels and imprinted in place thereof the name of "Affiliated Food Distributors, Inc." He also superimposed the name of the defendant Affiliated Food Distributors, Inc., upon the billheads and letterheads of the plaintiff corporation which were in his possession and thereafter used them in soliciting collection of the plaintiff's accounts receivable. It is uncontroverted that defendant Affiliated Food Distributors, Inc., through Adler, who with members of his family as his nominees are the sole stockholders and officers, appropriated all of the assets, labels, trade-marks, customers, and goodwill of plaintiff corporation as a result of which plaintiff virtually ceased doing business.

■ Defendants made a motion in this court to vacate the decree in the instant case on the ground that plaintiff corporation was dissolved on December 20, 1944, in an action filed by the attorney general of Illinois in the superior court of Cook county case number 124517. We took the motion with the case. It appears from objections filed by plaintiff to defendants' motion that the decree of dissolution heretofore entered against plaintiff corporation was vacated and set aside in the same proceeding on June 25, 1946, thus restoring the status of plaintiff as a domestic corporation. Defendants' motion is therefore denied.

■ Defendants' first contention is that plaintiff corporation may be disregarded as a form or a "fiction" since the present controversy is between two hostile stockholders and should be determined "with reference only to their individual rights." In their answer defendants admit that plaintiff is an Illinois corporation. The record shows that the plaintiff corporation paid Adler and Novak monthly salaries of $75 each from January 1937 to January 1, 1940; that Adler filed annual reports with the secretary of state as required by law in behalf of and as an officer of the plaintiff corporation. Moreover, defendants did not urge this point before the master or the chancellor. Under these circumstances we hold that defendants' contention is untenable.

■ It should be noted that when Adler organized defendant Affiliated Food Distributors, Inc., he was still a director of the plaintiff corporation. The law is well established that directors of a corporation are entrusted with the management of its business and property for the benefit of all the stockholders and are subject to the general rule which prevails in regard to trusts and trustees. (*Farwell v. Pyle-National Elec. Headlight Co.*, 289 Ill. 157, 164; *Pelcak v. Bartos*, 328 Ill. App. 435.)

Defendant Adler attempted to justify his conduct on the ground that the only property plaintiff corporation

received in return for its stock was a license from Novak to use a nonexistent trade-mark. What effect, if any, lack of federal registration had upon the sale of plaintiff's labels is doubtful, since it is undisputed that the sales increased every year. In the year ending 1936 they amounted to $3,923.95, and in 1939 the total sales aggregated about $39,000.

No evidence was offered tending to prove that Novak had any knowledge that the registration of the trade-mark had been canceled when he made the foregoing contracts. The master expressly found that Novak did not acquire this information until 1940. We think the master's finding was warranted by the evidence. Furthermore, no objection was made by the defendants to this finding and so far as the record shows that question is raised for the first time in this court.

Assuming, as Adler is contending, that Novak contributed nothing of value for his stock in plaintiff corporation, it seems to us that Adler's position in that respect is no better, since he merely made available to plaintiff corporation the facilities of Lithograph Company to furnish labels and thereby enhance the profits of Lithograph Company.

From a reading of the record it is clear that Adler's primary purpose in joining Novak in forming the plaintiff corporation was to increase the sale of labels, thus permitting him to share the profits equally with Novak in the plaintiff corporation and at the same time increasing the profits of Lithograph Company in which he also shared as a stockholder and an officer.

■■ Defendants urge that a court of equity has jurisdiction to dissolve plaintiff corporation since a deadlock exists between its stockholders Novak and Adler. They say that "no yearly election appears to have been held and so the directors continued as hold-over directors"; that in 1939 disputes arose between Novak and Adler, culminating in Novak taking control of plaintiff corporation and removing Adler as an officer thereof and that regardless of how the present

case terminates the deadlock will continue to the detriment of Adler. In *Appeal of Gidwitz v. Cohn*, 238 Ill. App. 227, involving a "deadlock" under circumstances not unlike those in the instant case, the court said, at page 230, that "courts of chancery are without jurisdiction to decree the dissolution of corporations, except in so far as that jurisdiction is conferred by statute." When Adler's counterclaim was filed in the present case, defendant Affiliated Food Distributors, Inc. had taken complete possession of plaintiff corporation's assets and business. Up to the time Adler organized Affiliated Food Products, Inc., plaintiff corporation was a going concern. The impasse among the directors was reached when Adler attempted to wrest control from Novak and his wife. In our opinion the evidence does not show that the acts of Novak and the latter's wife were either oppressive or fraudulent, nor that irreparable injury would result to the corporation from the deadlock. We therefore hold that the chancellor was warranted in dismissing the counterclaim of Adler which prayed for the dissolution of the plaintiff and liquidation of its assets.

Finally defendants contend that the chancellor erred in holding defendants other than Adler liable, and that, in any event, plaintiff corporation can only recover the selling profit of 20 per cent. It appears that Lithograph Company furnished labels to defendant Affiliated Food Distributors, Inc. on the same terms and conditions as those granted plaintiff corporation; that Adler owned 10 per cent of the stock of Lithograph Company and also had a 1/9 interest as a beneficiary in a trust which held other stock in the same company. The evidence is not clear as to the extent of Adler's holdings in Lithograph Company, nor does it appear that the other officers were apprised of or sanctioned Adler's conduct with respect to the breach of his fiduciary obligations to plaintiff.

Under these circumstances we are impelled to hold that only Adler and Affiliated Food Distributors, Inc., which he owned and controlled, are liable to plaintiff.

The decree provides that "defendants and each of them shall make an accounting to plaintiff of *all money* derived from the manufacture, use, display, sale, or distribution of labels." In our view this provision is too broad. The evidence shows that defendant Affiliated Food Distributors, Inc. was billed for labels upon the same terms as those given plaintiff corporation by Lithograph Company. Since plaintiff corporation had no claim under its agreement with Lithograph Company for any moneys in excess of 20 per cent of the invoice price to plaintiff's customers, we think defendants Adler and Affiliated Food Distributors should make an accounting to plaintiff corporation on this basis only, excluding any manufacturer's profit of Lithograph Company. The decree should therefore be modified accordingly.

For the reasons stated, the decree is reversed and the cause is remanded with directions for further proceedings not inconsistent herewith.

*Affirmed in part, reversed in part, and remanded with directions.*

KILEY and BURKE, JJ., concur.

## ON REHEARING.

In this case a rehearing was granted on the petition of plaintiff. Having considered the petition and the answer thereto we have decided to adhere to our opinion.