LESLIE M. PRICE, Trustee, Plaintiff-Appellee, *v.* THE STATE OF ILLINOIS, Defendant-Appellant.

First District (2nd Division)   Nos. 78-2006, 79-45 cons.

Opinion filed December 11, 1979.

William J. Scott, Attorney General, of Chicago (Gail A. Moreland, Assistant Attorney General, of counsel), for appellant.

Brown & Blumberg, of Chicago (Eugene L. Resnick, Herbert L. Hart and Stephen E. Smith, of counsel), for appellee.

Mr. JUSTICE PERLIN delivered the opinion of the court:

The State appeals from an order of the circuit court of Cook County finding that plaintiff was the trustee of an active express trust for the benefit of the shareholders of several dissolved corporations and that since the shareholders could not be located, the trust corpus, less a trustee's fee and attorneys' fees, escheated to the State under the Uniform Disposition of Unclaimed Property Act (Ill. Rev. Stat. 1977, ch. 141, par.

101 *et seq.*). The sole issue for review is whether the trial court's finding that there was an active express trust is against the manifest weight of the evidence.

We affirm.

On July 17, 1975, plaintiff, Leslie M. Price, filed a petition for dissolution of a trust and for other equitable relief, alleging that plaintiff held a fund which consisted of the undistributed proceeds of 15 liquidated corporations and that the shareholders of the various corporations could not be found. Plaintiff requested the court to determine whether the trust should be dissolved, to determine the disposition of the fund and to set attorneys' fees and reasonable fees for plaintiff for his duties as trustee. Named as defendants were the State of Illinois, Herbert Nechin, who was an attorney and holder of the fund as a joint tenant with plaintiff, 81 named holders of stock of the various corporations and any unknown holders of such stock.

On October 17, 1975, the State filed a motion to dismiss the petition alleging that the court lacked jurisdiction over the subject matter because the monies involved were subject to the Uniform Disposition of Unclaimed Property Act (hereinafter referred to as the Act), and the Act provides for disposition of the fund without court action through the Illinois Department of Financial Institutions. Plaintiff filed a brief in opposition to the motion to dismiss, arguing that the court had jurisdiction because the Act specifically exempts active, express trusts. On June 14, 1977, the court denied the motion to dismiss on the basis that the existence of an active, express trust was sufficiently pleaded in the petition.

On January 3, 1978, plaintiff filed an affidavit for service by publication on those named defendants (the 81 shareholders) who, after diligent inquiry, could not be located. On April 12, 1978, plaintiff filed a motion to enter defaults against all the defendants named in the affidavit, who had been served by publication, and against Herbert Nechin, who had been personally served, for failure to appear or otherwise plead. The court entered defaults against the named defendants and against Herbert Nechin.

Trial was held on August 15, 1978. Plaintiff, the sole witness, testified as follows: in the early 1930's plaintiff was a member of the bondholders' committee of Capital Mortgage Corporation and Capital Trust Company. The committee was formed to take over defaulted construction bonds on 15 apartment buildings located in the city of Chicago. The committee solicited the bondholders to deposit the defaulted bonds with Chicago Title and Trust Company so that foreclosure proceedings could be commenced. After foreclosures were decreed, the committee reorganized the 15 buildings into 15 separate corporations with a building being the sole asset of each corporation, and

the defaulted bonds were exchanged for shares of stock. Plaintiff was the secretary and treasurer of each corporation, and a John Ouska, who had been chairman of the committee, was the president of each corporation. The buildings were then sold and the proceeds of each were deposited into corporate bank accounts with plaintiff designated as a signatory.

All of the corporations were dissolved between January 1, 1941, and March 14, 1955, and plaintiff attempted to distribute the proceeds, but he was unable to distribute all the monies because a number of shareholders could not be located. Plaintiff testified that he was directed by the corporate officers to distribute the proceeds, and he was told he would be compensated. Plaintiff was also told by the attorneys for the corporation, the firm of Brown, Fox and Blumberg and particularly a Mr. Thane T. Schwartz, an attorney with the firm, to take care of the funds and he would be compensated. The attorneys did not say how much plaintiff would be paid. On March 14, 1955, plaintiff closed the 15 separate corporate accounts and deposited the undistributed funds (a sum of $6,629.65) into two accounts at Bell Federal Savings and Loan Association so that the money would earn interest. The two accounts were in the names of plaintiff and the attorney, Thane T. Schwartz, as joint tenants with the right of survivorship. The names of the corporations did not appear on the accounts, and plaintiff was not designated as "trustee" on either account. The funds were kept in those accounts until January 9, 1969, when plaintiff consolidated the two accounts into one interest-bearing account. The consolidated account was held in the names of plaintiff and Herbert B. Nechin as joint tenants with the right of survivorship. Herbert Nechin, an attorney with the firm of Brown and Blumberg (formerly Brown, Fox and Blumberg), was substituted for Thane Schwartz, who had died. On March 28, 1974, plaintiff again transferred the funds to a different account at Bell Savings in order to gain a higher rate of interest. This account, which remains in existence, was held by plaintiff and Herbert Nechin as joint tenants with the right of survivorship.

Between 1955 and 1975 plaintiff made distributions to 14 shareholders in the total amount of $967.61. The most recent distribution was in 1975 and it is not likely that any other shareholders will come forward. The balance in the account at the time of trial was $17,636.02.

Plaintiff testified that he never reported on his personal income tax return the interest earned on the funds since he did not own the money. Plaintiff never filed a report with the State Department of Financial Institutions. Plaintiff admitted that he had stated in a letter to the Attorney General that there were no trust agreements in effect and that he was never appointed trustee. However, plaintiff testified that he did not mean to imply to the Attorney General that he did not expect to be

compensated for his work. From 1941 to the time of trial plaintiff devoted approximately 94 hours of his time to take care of the funds.

Several exhibits were presented by plaintiff and were admitted into evidence at trial, including the bank books for the four accounts at Bell Savings; a list of the shareholders who could not be found; checks which were written by plaintiff to various shareholders but which were returned to plaintiff; correspondence between plaintiff and various shareholders and attorneys; and an affidavit dated February 25, 1969, in which plaintiff stated that the funds in the savings account at Bell Savings belonged to certain shareholders of liquidated corporations and that plaintiff claimed no ownership rights to the funds.

On September 12, 1978, Daniel C. Ahern, an attorney, filed a petition for allowance of fees stating that he represented plaintiff and he expended 85¼ hours of his time in representing plaintiff at trial below; Ahern requested fees at a rate of $75 per hour plus reimbursement for expenses. Eugene L. Resnick, an attorney with Brown and Blumberg, also filed a petition for allowance of fees and expenses, stating that he represented plaintiff in his capacity as trustee and he expended 10 hours of his time; Resnick requested fees at a rate of $75 per hour plus reimbursement of expenses.

On September 12, 1978, the court entered its findings and order. The court found that the fund was an active, express trust; that Thane T. Schwartz designated plaintiff to assume responsibility for the fund and told plaintiff he would be compensated; that plaintiff expended 92½ hours of time in caring for the funds; that a reasonable rate for plaintiff's services was $25 per hour; and that a reasonable rate for attorneys' fees was $60 per hour. The court ordered that the fund be terminated and that the balance of the fund, after the payment of attorneys' fees and fees to plaintiff, be delivered over to the director of the Illinois Department of Financial Institutions. The court entered judgment for plaintiff in the amount of $2,312.50 which was to be paid out of the fund. The court further awarded attorneys' fees, which were to be paid out of the fund, to Brown and Blumberg in the amount of $600 plus $47.12 in costs and to Ahern and Gillogly, Ltd. in the amount of $5115 plus $211.50 for costs.

Section 93 of the Business Corporation Act (Ill. Rev. Stat. 1977, ch. 32, par. 157.93) provides in pertinent part:

"Upon the distribution of the assets of a corporation among its shareholders, the distributive portion to which a shareholder would be entitled who is unknown or can not be found, or who is under disability and there is no person legally competent to receive such distributive portion, shall be presumed abandoned and reported and delivered to the Director of Financial Institutions and

become subject to the provision of the Uniform Disposition of Unclaimed Property Act."

Section 6 of the Uniform Disposition of Unclaimed Property Act (Ill. Rev. Stat. 1977, ch. 141, par. 106) provides:

"All intangible personal property distributable in the course of a voluntary dissolution of a business association, banking organization, or financial organization organized under the laws of or created in this State, that is unclaimed by the owner within 2 years after the date for final distribution, is presumed abandoned."

Section 7 of the Act (Ill. Rev. Stat. 1977, ch. 141, par. 107) provides:

"All intangible personal property and any income or increment thereon, held in a fiduciary capacity (other than as trustee of an active express trust) for the benefit of another person is presumed abandoned unless the owner has, within 7 years after it becomes payable or distributable, increased or decreased the principal, accepted payment of principal or income, corresponded in writing concerning the property, or otherwise indicated an interest as evidenced by a memorandum on file with the fiduciary;

\* \* \*

(c) If it is held in this State by any other person."[1]

Section 7a of the Act (Ill. Rev. Stat. 1977, ch. 141, par. 107a) specifically exempts "an active express trust" from the provisions of the Act. The Act further provides that persons holding funds or other property presumed to be abandoned under the Act shall report to the Director of the Department of Financial Institutions and that after notice is published, the funds or property are to be delivered over to the director. Ill. Rev. Stat. 1977, ch. 141, pars. 111 through 114.

The State contends on appeal that the entire fund constitutes abandoned property under sections 6 and/or 7 of the Act and that the trial court's finding that there was an active express trust was not supported by the evidence. Plaintiff contends that the evidence supports the trial court's findings that the funds were exempt from the Act because they were held in an active express trust (that is, until the court ordered the fund terminated on September 12, 1978).

■■ An express trust is a trust which is created in express terms in a written instrument or which arises from the direct and positive action of the parties *as evidenced by* written instruments, *words expressed* or both. (*Samuel v. Northern Trust Co.* (1975), 34 Ill. App. 3d 500, 505, 340 N.E.2d

---

[1] Prior to October 1, 1975, the statute provided for a period of 15 years after which property was presumed to be abandoned.

162, *appeal denied* (1976), 62 Ill. 2d 592.) An express trust is distinguished from an implied trust, which does not arise from agreement or intention but rather arises by operation of law when the circumstances of a transaction are such that the court finds it inequitable for the legal owner to enjoy the beneficial interest.[2] (Black's Law Dictionary 1681 (4th ed. 1957).) An active trust is one in which the trustee is charged with active duties to carry out the purpose of the trust; this is distinguished from a passive trust which merely vests legal title in the trustee and does not require the performance of any duties by the trustee. Black's Law Dictionary 1680-1681 (4th ed. 1957).

■■ The requirements of a valid express trust of personal property are: (1) an intention to create a trust, which may be shown by a declaration of trust by the settlor or *by circumstances which show that a trust was intended to be created by the settlor (LaThrop v. Bell Federal Savings & Loan Association* (1976), 42 Ill. App. 3d 183, 355 N.E.2d 667, *aff'd* (1977), 68 Ill. 2d 375, 370 N.E.2d 188, *cert. denied* (1978), 436 U.S. 925, 56 L. Ed. 2d 768, 98 S. Ct. 2818); (2) a definite subject matter or trust property; (3) ascertainable beneficiaries; (4) a trustee; (5) a trust purpose; and (6) delivery of the trust property to the trustee (*Kilgore v. State Bank* (1939), 372 Ill. 578, 584, 25 N.E.2d 39; *Joslin v. Ashelford* (1961), 29 Ill. App. 2d 202, 210, 172 N.E.2d 806). There is no particular formality required in the creation of an express trust (*Merchants National Bank v. Frazier* (1946), 329 Ill. App. 191, 67 N.E.2d 611) and use or nonuse of the words "in trust" is not controlling as to whether an express trust has been created (*LaThrop*). As the court in *LaThrop* stated, the question is:

> " 'whether the settlor manifested an intention to impose upon himself or upon a transferee of the property, equitable duties to deal with the property for the benefit of another person,' which is in effect 'whether the settlor manifested an intention to create the kind of relationship which to lawyers is known as a trust.' 1 Scott, Law of Trusts §24, at 192 (3d ed. 1967)." (*LaThrop*, 42 Ill. App. 3d 183, 187.)

It is established that an oral express trust of personal property is valid;

---

[2] Implied *trusts are commonly divided into constructive and resulting trusts*. A constructive trust arises when there is breach of a fiduciary relationship or when fraud, actual or constructive, is proved. (*Williams v. Teachers Insurance & Annuity Association* (1973), 15 Ill. App. 3d 542, 304 N.E.2d 656.) A constructive trust is imposed because the person holding title to property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property. (*Bozeman v. Sheriff* (1976), 42 Ill. App. 3d 228, 231, 355 N.E.2d 624.) A resulting trust arises from the presumed intent of the parties. (*Williams*, at 547.) Generally, a resulting trust is limited to situations in which land or other property is purchased with the money of one party and title is taken by another; it is presumed that the title is held in trust for the party furnishing the purchase money. *Zelickman v. Bell Federal Savings & Loan Association* (1973), 13 Ill. App. 3d 578, 586, 301 N.E.2d 47.

however, evidence of the trust must be clear and convincing. (*In re Estate of Gandolfi* (1970), 131 Ill. App. 2d 752, 263 N.E.2d 516; *Gossett v. Levy* (1963), 39 Ill. App. 2d 447, 188 N.E.2d 894.) In other words, the acts or words relied on must be so unequivocal as to lead to but one conclusion, and if the evidence is doubtful or capable of reasonable explanation upon any other theory, it is not sufficient to establish an oral express trust. (*Samuel*, 34 Ill. App. 3d 500, 505; *Gossett*, 39 Ill. App. 2d 447, 455.) The findings of the trial court as to the existence of a trust will not be disturbed on review unless such findings are against the manifest weight of the evidence. *Gossett*, 39 Ill. App. 2d 447, 455.

■■ ■ In the case at bar the trial court found that plaintiff held the undistributed funds in an active express trust for the benefit of the shareholders of the dissolved corporations. The State contends, however, that the evidence did not establish the first element of an express trust, an intent to create a trust. Plaintiff testified that he was directed by the corporate officers and attorneys to take the corporate funds and to distribute such funds to the former shareholders. The corporate officers, one of whom was plaintiff, had authority to create a trust of the proceeds for the benefit of the shareholders, since it is well established that the directors and officers of a corporation are entrusted with the management of the corporate property for the benefit of the shareholders. (*Lush'us Brand Distributors, Inc. v. Fort Dearborn Lithograph Co.* (1946), 330 Ill. App. 216, 222, 70 N.E.2d 737.) It is true, as the State contends, that an officer of a corporation is not entitled to compensation unless such compensation is authorized by the bylaws or by resolution of the board of directors. (*Joy v. Ditto, Inc.* (1934), 356 Ill. 348, 190 N.E. 671.) However, the court in *Ditto* further held that where an officer has performed services outside the scope of his duties as such officer at the instance of someone having general authority over its affairs and under a promise of payment for such services, he is entitled to receive compensation. (*Ditto*, 356 Ill. 348, 355.) Clearly, the officers of the corporations had authority to wind up the affairs of the corporations and to direct someone to distribute the proceeds to the shareholders. It should be noted that at the time plaintiff took control of the undistributed funds he was no longer an officer since all of the corporations had been previously liquidated. Thus plaintiff in taking care of the funds was not merely carrying out his duties as an officer. Plaintiff's testimony, which is uncontradicted, indicated an intent by the officers to create a trust for the benefit of the shareholders who, at the time of the dissolutions of the corporations, could not be located. Although it is true that plaintiff had stated in a letter to the Attorney General that there were no trust agreements in existence, this statement was made in answer to a request by the Attorney General for

copies of any trust agreements and documents; thus plaintiff's statement referred to written agreements and did not necessarily negate the existence of an oral express trust. Plaintiff's actions after taking control of the undistributed funds, as evidenced by the various exhibits, clearly show that plaintiff believed a trust was in existence. Plaintiff dealt with the fund as a trustee, and he actively sought to fulfill the purpose of the trust by attempting to locate the former shareholders. Aside from holding the funds in his own name, plaintiff never claimed any rights to the funds and never used any of the money for his own benefit. In fact, there is no allegation by the State of wrongdoing on the part of plaintiff. In the absence of any evidence contradicting that which plaintiff presented, we conclude that the trial court's finding that there was an active express trust was not against the manifest weight of the evidence. We note, however, that our affirmation of the trial court's order is limited to the facts of this case and is not to be construed as a position of general applicability. It is established that a trustee may be entitled to reasonable compensation for his services in accordance with an oral agreement (*Green v. Gawne* (1943), 382 Ill. 363, 47 N.E.2d 86), and what constitutes reasonable compensation depends on the facts and circumstances and rests in the sound discretion of the trial court. (*Smith v. Stover* (1957), 15 Ill. App. 2d 78, 93, 145 N.E.2d 515.) The State does not question the reasonableness of the amount of compensation awarded to plaintiff, and the record does not show an abuse of discretion by the trial court. Further, we note that the State in their brief did not make any specific arguments with respect to the allowance of attorneys' fees, and thus the issue was not preserved for our consideration. Ill. Rev. Stat. 1977, ch. 110A, par. 341(e)(7).

Based on the foregoing we affirm the judgment of the circuit court.

Affirmed.

STAMOS, P. J., and DOWNING, J., concur.