**In re Garry WINER, Debtor.**

**Bankruptcy No. 90 B 19434.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Jan. 15, 1993.

---

**540**

Catherine Steege, Jenner & Block, Chicago, IL, for debtor.

Leonard Groupe, Trustee.

Bruce Katz, Chicago, IL, for Trustee.

Thomas Wolford, Chicago, IL, for E F & G, Ltd.

## MEMORANDUM OPINION

DAVID H. COAR, Bankruptcy Judge.

This matter came to be heard on the Motions of the Debtor, GARRY WINER, and the Trustee, LEONARD GROUPE, for a Rule to Show Cause why E F & G, LTD. should not be held in Contempt of Court.

### Findings of Fact

In 1983, Garry Winer [Winer] formed Challenger Corporation [Challenger] and was Challenger's sole shareholder and president. Challenger's Articles of Incorporation authorized 30,000 shares of stock. One thousand shares of stock were actually issued, all to Winer.

To obtain more capital, Challenger entered into a "preliminary understanding" with Daniel M. Benzaquen [Benzaquen], Joel H. Cohen [Cohen] and Patrick A. Horan [Horan] on April 20, 1989. In the document memorializing the arrangement, Benzaquen, Cohen and Horan [the Partners] agreed to invest $50,000 in Challenger in exchange for receiving a 25% equity position in Challenger. The Partners would receive the right to buy additional equity for incremental costs of $25,000 per 7.5% of

Challenger, with the total investment by the Partners not to exceed 40% of Challenger's equity. The Partners would receive dividends if Challenger was profitable but they would not have voting rights. The "preliminary understanding" also stated that it would be replaced by an official stock transfer agreement. No stock transfer agreement was ever executed and there was never an issuance or transfer of any stock to the Partners.

In a transaction apparently related to the "preliminary understanding", a note was executed between Winer and the Partners, dated April 21, 1989, whereby Winer promised to pay the Partners $50,000 within one year at 0% interest. Winer also promised the partners a 25% equity position in Challenger per the "preliminary understanding." Apparently, the Partners transferred $50,000 to Winer or Challenger. It is unclear whether the 25% equity position was to come from Winer's 1,000 shares or from additional shares of Challenger to be issued at some future date. It is also unclear whether the 30,000 shares authorized by the Articles of Incorporation include a class of non-voting shares.

While Challenger was in operation, it developed a desktop publishing program known as the Zeus Program [Zeus] for the MacIntosh operating system. Zeus was never marketed due to a dispute with its distributor. As a result, Challenger was unable to generate revenue and ceased operating. On July 2, 1990, the Illinois Secretary of State involuntarily dissolved Challenger, citing Challenger's failure to file an annual report and failure to pay the required Illinois annual franchise taxes. Challenger has not taken any formal steps to become reinstated or to "wind up" its business and affairs.

On October 19, 1990, Winer filed an individual voluntary Chapter 13 petition in the United States Bankruptcy Court for the Northern District of Illinois. On November 28, 1990, the case was converted to a Chapter 7 proceeding and Leonard M. Groupe was appointed trustee [Trustee].

On February 15, 1991, the Trustee conducted a first meeting of creditors pursu-

ant to 11 U.S.C. § 341. At that meeting, the Trustee examined Winer about his assets. Winer listed as his sole asset his 1,000 shares of Challenger stock. The Trustee then examined Winer about what Challenger owned. Winer stated that Challenger had a potential copyright infringement claim against Quark, Inc. [Quark] for infringement of the Zeus program. In spite of that fact, the Trustee filed a "No Asset" report which stated that the Trustee believed there were no assets in this estate. On April 16, 1991, after the Trustee filed his no-asset report, Winer entered in a Letter of Agreement and granted a license in the Zeus program to Zeus, Inc. In doing so, Winer purportedly acted on behalf of Challenger as its President. Pursuant to the licensing agreement, Zeus, Inc. was to pay Challenger a royalty of one-third of all net income earned by Zeus, Inc. from distributing the Zeus program. Winer did not seek nor obtain permission from the Trustee or the Bankruptcy Court to enter into this agreement. Moreover, the Zeus Program was not listed as property of the estate in schedules filed in his bankruptcy case. On October 22, 1991, Zeus, Inc. filed a suit alleging copyright infringement and other actions against Quark in the United States District Court for the Northern District of California [the California case]. After that suit was filed, the principals of Quark, Fred Eberhimi and Timothy Gill formed a new company known as E F & G, Ltd. [E F & G], which purchased the claims of the Partners against Winer for $20,000. Thereafter, E F & G asserted a claim to 25% of the equity in Challenger with the right to buy an additional 15% pursuant to the "preliminary understanding" between the Partners and Winer.

On February 18, 1992, E F & G presented a motion in this Court seeking to reopen Winer's bankruptcy case. In that motion,

E F & G asserted standing in the bankruptcy case "as assignee of the claims of Joel H. Cohen, Daniel M. Benzaquen and Patrick Horan, who were listed as unsecured creditors by the debtor." The Court granted the motion to reopen when it became clear that the rights in and to the Zeus Program had value to the estate.

For openers, E F & G initially offered to buy the Trustee's rights in the Zeus Program for $150,000 if the Trustee could successfully avoid the post-petition transfer of the Zeus Program by Winer to Zeus, Inc. or for $75,000.00 if the transfer was not avoided. That offer was rejected. E F & G eventually increased its offer to approximately $1,300,000.00 for the purchase of the estate's interest in the Challenger stock.*

Attempting to invoke the "preliminary understanding", E F & G delivered a cashier's check in the amount of $50,000.00 and a letter to the Trustee for the purchase of 15% of Challenger's stock. In that letter, E F & G requested that the Trustee, as representative of Winer's estate, issue or transfer stock certificates to E F & G representing 40% of the Challenger equity. By letter dated July 2, 1992, the Trustee refused the cashier's check and the rest of the E F & G "request." By letter dated July 2, 1992, E F & G made a similar request to Winer personally. This request was likewise refused.

For its part, Zeus, Inc. threatened the estate with a large claim if the licensing agreement was terminated by the Trustee (or, perhaps, by E F & G if E F & G acquired the Winer stock). Zeus later presented its own offer which proposed to drop any claims that Zeus, Inc. might have against the estate and, if the Trustee would ratify the licensing agreement and join the copyright infringement suit against Quark as an additional party-plaintiff. To sweet-

---

* Because it is not necessary in order to decide the issues currently presented, this Court will only note, without additional comment, the issues arising out of E F & G's purchase of the Cohen, Benzaquen and Horan claims scheduled at $50,-000 and 25% of the equity of Challenger for $20,000 at a time when E F & G was apparently prepared to offer amounts sufficient to pay 100% of the claims against the estate. *See,* C.J. Fortgang & T.M. Mayer, *Trading Claims and Taking Control of Corporations in Chapter 11,* 12 Cardozo L.Rev. 1 (1990). *See also, In re Chicago, Milwaukee, St. Paul & Pacific RR. Co.,* 840 F.2d 1308 (7th Cir.1988) and other cases involving trading in claims of bankruptcy estates.

en the pot and meet the E F & G offer, Zeus, Inc. also offered to modify the royalty provisions of the licensing agreement in a way which would pay to the estate amounts sufficient to satisfy the claims of the creditors of the Winer estate and leave money available for the equity holders in the event of a recovery in the California case.

After weighing the competing offers, the Trustee decided to accept the Zeus, Inc. offer. A motion seeking approval of this arrangement was filed. E F & G opposed the motion arguing that the Trustee should be ordered to accept its offer. On July 27, 1992, this Court approved the Trustee's settlement with Zeus, Inc. and overruled the objections of E F & G. In doing so, this Court determined that acceptance of the Zeus, Inc. offer was in the best interests of Winer's bankruptcy estate and of the Debtor. This Court's Order of July 27, 1992 was appealed to the United States District Court for the Northern District of Illinois and, as far as this Court is aware, that appeal is currently pending.

During the hearing on the Trustee's motion to compromise and settle his dispute with Zeus, Inc., E F & G challenged the Trustee's legal authority to enter into an arrangement in which the Trustee purported to bargain with the assets of Challenger. E F & G maintained that the Trustee had no rights in the Challenger assets generally (and in the Zeus Program in particular) because the estate's interest was limited to rights in Winer's shares of Challenger stock. This Court concluded that for purposes of the hearing to compromise only, that the Trustee, as representative of the estate of a shareholder in possession of the assets of a dissolved corporation, held those assets for creditors and equity holders of that corporation.

Having failed to outflank Zeus, Inc. in the California case by actions taken in this Court, on August 28, 1992, E F & G filed a Complaint in and Motion for Preliminary Injunction in the United States District Court of Illinois [the District Court Action]. In that proceeding, E F & G named Challenger, but not the Debtor or the Trustee as defendants. E F & G sought to compel the issuance of stock pursuant to the "preliminary understanding" and to enjoin Challenger from transferring legal or beneficial interest in its assets (including the Zeus Program) to any person or entity without further court order. E F & G alleged that any such transfer would prejudice its rights as a "shareholder" of Challenger. One of the events precipitating the District Court Action was the Trustee's demand to Winer that the Challenger program be "transferred" to the Trustee so that the provisions of the settlement with Zeus, Inc. could be carried out.

The Trustee and the Debtor responded to the District Court Action by filing in this Court, applications for a Rule to Show Cause against E F & G. Both Trustee and the Debtor contend that E F & G's actions in the District Court Action violate the automatic stay in Winer's bankruptcy case by attempting to interfere with the Trustee's ability to transfer interests in the Zeus Program, necessarily seeking to exert control of property of Winer's bankruptcy estate.

### Discussion and Conclusions of Law

It is helpful to begin by stating the obvious. E F & G's efforts in the District Court Action and its efforts in this Court have been motivated by a desire to gain advantage in the California case. Counsel for E F & G took umbrage when this Court said as much in these proceedings. He should not have. Indeed, E F & G has been forthright about its relationship to Quark, the defendant in the California action. There is nothing illegal or immoral about what E F & G is doing, but it is important to square assertions made on behalf of E F & G with its deeds. During the hearing on the Trustee's motion to settle with Zeus, Inc., Timothy Gill, Chairman of the Board of Quark and Secretary, Treasurer of E F & G, testified that E F & G's attempts to purchase Winer's stock in Challenger were an attempt to hedge against possible outcomes in the California litigation. If that was true, then it does not follow that Challenger's assets should not be disposed of by the Trustee except to the extent that E F & G disagrees with this

Court's prior disposition of the Trustee's motion to compromise with Zeus, Inc. E F & G's injunction action in the District Court is consistent only with its attempts to undermine the Plaintiff's position in the California case. But that does not end the inquiry in this Court—it only provides backlighting for the real issues presented.

The essential issue here is whether E F & G's actions in the District Court violate the automatic stay. Both the Trustee and the Debtor rely heavily on 11 U.S.C. § 362(a)(3) which stays, "any act to obtain possession of property of the estate or property from the estate or to exercise control over property of the estate." The only asset of the Winer estate is whatever interest Winer has in Challenger and Challenger's assets. It appears that the only asset that Challenger has is its interest in the Zeus Program. Count I of the E F & G action in the District Court seeks to enforce the "preliminary agreement" between Challenger and the Partners.

The Trustee contends that the following interests are property of the estate:

(1) Winer's shares of Challenger stock;
(2) Winer's rights to distributions from Challenger on account of those shares; and
(3) Winer's right to wind up the affairs of Challenger, at least insofar as those rights affect the estate's rights to distributions on account of Winer's stock.

Count I of the District Court Action sounds in breach of contract and seeks to specifically enforce the "preliminary agreement" and to enjoin the transfer of the assets of Challenger, especially Zeus Program. Count II of that Action seeks a preliminary and permanent injunction accomplishing the same thing.

All of the parties (the Trustee, the Debtor, and E F & G) have made much of whether the "preliminary understanding" reaches the status of an enforceable contract and whether a dissolved corporation is authorized to issue new shares. These are interesting questions, especially the latter; so interesting that this Court may have encouraged the flurry of citations and argument over these issues. These are matters that go to the merits of the case pending in the District Court and their resolution is probably not essential to resolution of issues pending before this Court. The only qualification of that view is necessitated by the fact that the "preliminary understanding" does not make clear whether the shares to be issued to the Partners were to come from authorized, but unissued, shares of Challenger, or whether they were to come from shares already being held by Winer. E F & G's actions in first seeking the additional 15% from the Trustee and then Winer suggests that it, too, is unclear as to what was to be the source from which the Partners' shares were to come.

There can be no serious question but that the shares Winer held on the day the petition was filed constitute property of the estate. If E F & G is seeking to assert possession of, control over, or an interest in those shares, then its actions in so doing violate § 362. *See, In re Dublin Properties,* 20 B.R. 616 (Bankr.E.D.Pa.1982). If, on the other hand, the "preliminary understanding" contemplated that the shares to be issued were to come from authorized but unissued shares of Challenger, then this Court sees no reason why the automatic stay should be implicated under the facts of this case.

The second interest which the Trustee claims as estate property is Winer's right to distributions from Challenger on account of his shares of Challenger stock. In the District Court Action, E F & G asserts that unless that Court enjoins the transfer of rights in and to the Zeus Program, Challenger's creditors and equity holders will be hurt. Even if it were to obtain specific performance of the agreement, E F & G and Winer would be the only shareholders of Challenger. But Quark/E F & G stand to gain more if the California action is terminated than if Challenger and Zeus, Inc. prevail in that action. The Zeus Program never made money in the hands of Challenger or Zeus, Inc. and no one has suggested that it will ever make money independent of the copyright action in California in which Quark is the defendant. Mr. Gill of Quark/E F & G testified that

the California litigation cost approximately $100,000 in the month of June alone and "is incredibly costly." One of the attorneys for E F & G before this Court is also an attorney for Quark in the California action. The first offer that E F & G made to the Trustee was $150,000. The original objections to E F & G's low-ball offers to buy the estate's interest and end the California litigation came from Winer because the offers would leave nothing for him as debtor and shareholder in Challenger. E F & G has no incentive, as shareholder of Challenger, to pursue the interests of Challenger's creditors and shareholders. Indeed, its real interests are directly at odds with the interests of the creditors and shareholders of Challenger. Any recovery in the Zeus litigation would come from Quark, E F & G's first cousin, and though E F & G would share in this recovery, as a Challenger shareholder, Quark/E F & G's best outcome would be if the Zeus litigation was dropped and the Challenger shareholders recovered nothing. A review of the schedules suggests that many of the creditors listed in Winer's schedules are actually creditors of Challenger. E F & G has not alleged either in this Court or the District Court that there are additional creditors of Challenger who are not listed in the bankruptcy case. Indeed, Challenger's creditors may have contingent claims in Winer's bankruptcy case with respect to any liability that Winer, as an officer, has for maladministration of Challenger and the Challenger assets. It is doubtful whether E F & G is really interested in protecting the interests of the Challenger creditors and shareholders or in seeking to shore up Quark's position in the California litigation. It is further doubtful that the interests of the Challenger creditors and shareholders (other than E F & G) are served by E F & G's actions in the District Court Action.

With that background in mind, the Trustee's contention that Winer's right to distributions from Challenger on account of his shares are affected by E F & G's actions in the District Court take on a different and more complex texture. In response, E F & G parades a horrible. E F & G says that if the Trustee's position is correct, then any

time the debtor is a shareholder of a corporation and that corporation takes action or is acted upon in a way which diminishes (or threatens to diminish) the value of the debtor shareholder's stock, then that action by or against the non-debtor corporation would be stayed. Stated more generally, actions taken against a non-debtor which will affect the value of property of the estate are stayed. That overstates the proposition necessary to reach the result sought by the Trustee, and even though there are cases that seem to endorse that proposition (*see, e.g., In re 48th Street Steakhouse, Inc.*, 835 F.2d 427 (2d Cir. 1987), the concern raised by E F & G is troublesome and its adoption is unnecessary to resolution of this proceeding.

Instead, the Court will focus on the third interest cited by the Trustee. Under the terms of the "preliminary understanding", the shares to be issued to the Partners were to be non-voting shares. Thus, even if specific performance is granted, E F & G would have rights to 40% of any dividends from Challenger, 40% of its assets upon distribution and no right to participate in the wind-up process. Corporate officers have the authority to wind up the affairs of a dissolved corporation. *Price v. Illinois*, 79 Ill.App.3d 143, 34 Ill.Dec. 690, 398 N.E.2d 365 (1979). Winer is the officer with the authority to wind-up Challenger's affairs. As long as Winer is in a bankruptcy proceeding, that authority must be exercised in a way which maximizes the recovery to the estate. *Wabash Valley Power Ass'n v. Rural Electrification Admin.* 903 F.2d 445 (7th Cir.1990) (A debtor in bankruptcy is to maximize the value of the estate ...); *Estes v. Dinzole et al.*, 1989 WL 68392, 1989 U.S.Dist. LEXIS 7697 (N.D.Ill. June 13, 1989) ([T]rustee's duty is to maximize the value of the estate ...); *In re L & S Industries, Inc.*, 122 B.R. 987 (Bankr.N.D.Ill.1991) (The trustee's responsibility is to preserve and maximize the value of the estate ...). The relief sought by E F & G in the District Court Action directly impairs the Debtor's and the Trustee's ability to wind up the affairs of Challenger and realize a return on the Challeng-

er stock—for all who have an interest in Challenger including the estate. E F & G litigated in the bankruptcy court and lost on the issue of which action would maximize the return to the Debtor and Challenger. That is now on appeal, but E F & G seeks either another bite of the apple or a cheap way to stay proceedings pending that appeal.

Courts have interpreted the § 541(a)(1) definitions of property of the estate broadly. *See, United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). There is no question but that on the date and time of filing the bankruptcy petition, Winer possessed the power and authority to wind up the affairs of Challenger. The question presented here is whether that power to "wind up" became property of the estate.

*Colliers on Bankruptcy* says the following about the history and sweep of § 541(a):

> Section 70(a)(3) of the [former Bankruptcy] Act which had remained unchanged since the Act of 1898 had been characterized as manifesting a purpose to make the assets of the estate broadly inclusive (citing *Board of Trade v. Johnson,* 264 U.S. 1 [44 S.Ct. 232, 68 L.Ed. 533] (1923)).

4 *Collier on Bankruptcy* ¶ 541.21 pp. 106–107 (15th ed. 1992).

*Collier's* then goes on to list examples of cases in which courts under the Act held that powers of the bankrupt were deemed vested in the trustee. Two of those cases are illustrative.

In *In re Newfoundland Syndicate,* 196 F. 443 (D.C.N.J.1912), the debtor was a corporation. Prepetition, several shareholders received stock for a price less than the aggregate par value of the shares received. State law allowed the directors of the corporation to assess the shareholders for the difference between what they actually paid and what they should have paid. The trustee caused the assessment to issue and the court upheld the right of the trustee to do so. In *Moore v. Herrink,* 77 F.2d 96 (4th Cir.1935), just prior to the bankruptcy of a corporation, the board voted to pay past due salary to the corporate president.

Of the total to be paid, $20,000 was unrecoverable by the president because recovery was barred by the statute of limitations. After the bankruptcy case was filed, the trustee voided the transactions. The Third Circuit approved the trustee's action, saying that, "§ 70(a) of the Act provides in substance that the trustee of the estate of a bankrupt shall, as of the effective date of adjudication, be vested, by operation of law, with all the powers which the bankrupt might have exercised for his own benefit." 77 F.2d at 97.

In *Newfoundland Syndicate,* the trustee was deemed vested with the power that state law gave to the directors of a corporation to assess shareholders. In *Moore v. Herrink,* the trustee was vested with the board's power to nullify an invalid act. Thus, bankruptcy law has long recognized that a power (as opposed to an interest in specific property) deriving from a statute or otherwise, may become property of the estate.

■ To be sure, the cases cited involve situations in which the debtor was a corporation and the power at issue was a power given to the board of that corporation. E F & G argues that where the debtor is merely the shareholder/officer of a non-debtor corporation, the power to wind up the corporation's assets does not become property of the estate. E F & G asserts two essential reasons in support of this position and they will be addressed in turn.

First, E F & G says that under non-bankruptcy law (and presumably under bankruptcy law) the shareholders' right to participate in the corporation's assets comes after the claims of the corporate creditors have been satisfied. Therefore, Winer's (and the Trustee's) right to Challenger's assets comes after the claims of Challenger's creditors are satisfied. So far, so good. But E F & G then leaps to the conclusion that the claims of the Challenger creditors must be addressed by only the entity that state law authorizes to wind up the corporation's affairs (the corporate officer) and that this must be done in a proceeding other than one involving the bankruptcy of that officer.

It is not clear why that should be so. There are only two possibilities: (1) the value of Challenger's assets is equal to or less than the amount of the claims of its creditors; or (2) the value of Challenger's assets is greater than the amount of the claims of creditors. If the first possibility is true, then either the trustee will agree to abandon the power pursuant to 11 U.S.C. § 554(a) or be ordered to do so pursuant to § 554(b). If the second possibility is true, then the trustee will liquidate the corporation's assets and distribute the proceeds according to the priorities established by law. The Trustee and Winer will not receive anything on account of Winer's shares of Challenger until Challenger's creditors have been paid. The prospect of having a trustee administer property as to which entities other than the debtor have an interest is not alien to the Bankruptcy Code. § 363(h), for example, permits the trustee to sell property in which the estate and another entity have an interest. There is nothing in § 363(h) which conditions the trustee's power to deal with jointly-owned property only if the co-owner does not have creditors.

The second reason proffered by E F & G as to why the power to wind up does not become property of the estate is that the right to wind up is "personal" and therefore not susceptible of becoming property of the estate. To be sure, there are cases in which courts have drawn exactly the dichotomy that E F & G asserts. Unfortunately for E F & G, many of those cases involve rights that would clearly be property of the estate under § 541(a). *See, e.g., In re Nabors*, 280 F. 943 (D.C.Ala.1922). More importantly, most of those cases are woefully short of analysis as to how "personal" rights are defined. This Court is informed by the analysis of the District Court of Wisconsin in *In re Grant*, 21 F.2d 88 (D.C.Wis.1927). A life insurance policy gave the insured the right to change the beneficiary and surrender the policy and collect the cash surrender value. The trustee attempted to exercise those rights and the debtor objected. The court had this to say:

The fact that this privilege or power is deemed personal to the insured is stressed somewhat by counsel for the bankrupt as bearing upon his claim that the right does not pass to the trustee. But this is not thought sound in view of the provisions of subdivision 3 of section 70(a) of the bankruptcy law. *Grant*, 21 F.2d at 90.

As *Collier's* says, "The same reasoning should apply under § 541(b)(1) of the Code" which excludes from property of the estate only those powers which may be exercised by the debtor, "solely for the benefit of an entity other than the debtor."

E F & G argues that the power to wind up Challenger's affairs is a "power that the debtor may only exercise solely for the benefit of an entity other than the debtor" and, therefore, excludable from the definition of property of the estate § 541(b)(1). Not so. Winer holds the Challenger assets in two capacities, first as president of Challenger with the corresponding responsibility to dispose of those assets in a manner consistent with the rights of all those who have an interest in those assets. But Winer also has a substantial interest in those assets separate and apart from his obligations as President. At best, Winer is sole shareholder of Challenger—at worst, he will be holder of 60% of its shares. As such, he and the Trustee have an undisputed interest in the assets of Challenger upon distribution. It is therefore inaccurate to suggest that Winer holds Challenger's assets and the power to wind up *"solely* for the benefit of an entity and other than the debtor" [emphasis added]. Surely, Winer could not refuse to wind up Challenger's affairs so as to defeat the Trustee's ability to realize on the value of the shares. The Bankruptcy Code recognizes the possibility of the estate having an interest in property together with other interest holders.

E F & G argues that the Trustee has no legal or equitable interest in the Challenger assets by virtue of succeeding to Winer's stock interest, yet E F & G is claiming an interest in the assets of Challenger by virtue of an agreement to receive stock in the future. E F & G cannot have it both ways.

The bankruptcy estate has a direct and undeniable interest in the Challenger assets because of the dual capacity in which Winer possesses those assets.

For the foregoing reasons, this Court concludes that the relief sought by E F & G in the District Court Action violates the automatic stay imposed by § 362(a)(3) in the following particulars:

(1) to the extent that it seeks to compel the transfer of any stock held by Winer on the day of filing of bankruptcy petition to E F & G;

(2) to the extent that E F & G seeks an injunction against the transfer of Challenger assets to the Trustee for the purpose of winding up Challenger's affairs and distributing any assets or proceeds after satisfaction of claims of Challenger's creditors, to its equity holders.

### Contempt and Sanctions

These proceedings arise as a result of a Motion for Rule to Show Cause. There is a split in authority as to whether a bankruptcy court possesses civil contempt power. *Cf. In re Sequoia Auto Brokers, Ltd.*, 827 F.2d 1281 (9th Cir.1987) *with, In re Miller*, 81 B.R. 669 (Bkrtcy.M.D.Fla.1988).

The Bankruptcy Code provides in § 362(h) that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys fees, and, in appropriate circumstances, may recover punitive damages." Because § 362(h) provides ample power to address the violation here involved, this Court will not need to resort to the civil contempt power and will provide relief pursuant to the specific provision of § 362(h).

That E F & G's actions were willful is beyond dispute. It was aware of the bankruptcy case, the automatic stay and this Court's prior orders. Accordingly, costs and attorneys' fees of the Debtor and Trustee in connection with the Rule to Show Cause and proceedings in the District Court Action will be assessed against E F & G.

Because the issues involved here are obscure, no punitive damages will be imposed. Instead, E F & G will be given an opportunity to amend its Complaint and Motion for Injunctive Relief in the District Court in accordance with the views expressed herein. If E F & G fails to do so within a reasonable time, this Court will consider further relief (including punitive damages) against E F & G.

Trustee and Debtor shall file with this Court and serve on E F & G an itemized statements of fees and costs incurred in connection with these motions and in the District Court Action on or before January 29, 1993. If E F & G objects to any portion of these itemized statements, written objections thereto shall be filed with the Court and served upon the Trustee and the Debtor on or before February 10, 1993. If no objections are filed within the time provided, then the totals contained in the statement(s) shall become the final damages assessed pursuant to § 362(h) and an order to that effect will be entered without further notice. If objections are timely filed, a hearing on the objections will be held on February 19, 1993 at 10:00 a.m.