In re WHITE FARM EQUIPMENT COMPANY, a Delaware corporation, Debtor.

Paul BRINKMANN, d/b/a Brinkmann Farm Equipment, Plaintiff,

v.

WHITE FARM EQUIPMENT COMPANY and Borg-Warner Acceptance Corp., Defendants.

Bankruptcy No. 85 B 7532.
Adv. No. 85 A 1271.

United States Bankruptcy Court, N.D. Illinois, E.D.

June 26, 1986.
Memorandum and Order Aug. 25, 1986.

Susan Hodges of Mayer, Brown & Platt, Chicago, Ill., for plaintiff.

Steven Bobo of Towbin & Zazove, Chicago, Ill., for debtor-defendant.

*Memorandum and Order*

JOHN D. SCHWARTZ, Bankruptcy Judge.

This cause is before the Court on the motion of Paul Brinkmann for summary

judgment on his adversary complaint against the debtor, White Farm Equipment Company ("WFE") and Borg-Warner Acceptance Corporation ("BWAC"), WFE's principal creditor. Also before the Court is WFE's motion for summary judgment.

Brinkmann is a farm implement dealer who sold farm implements manufactured by WFE. Prior to the commencement of these bankruptcy proceedings on May 22, 1985, the Dealership Agreement between WFE and Brinkmann was terminated. Pursuant to the Dealership Agreement, Brinkmann returned certain unsold inventory ("Inventory") to WFE but did not receive payment as specified by the Dealership Agreement. In the adversary complaint, Brinkmann seeks a determination that he owns all right, title and interest in the Inventory or the proceeds thereof pursuant to the *Illinois Farm Equipment Fair Dealership Law* (Ill.Rev.Stat. ch. 5, ¶ 1501 *et seq.* (1985)) (hereinafter "Farm Act") and the repurchase provisions of the Dealership Agreement with WFE.

Brinkmann and WFE have stipulated to the following facts: Pursuant to the Dealership Sales and Service Contract ("Dealership Agreement"), Brinkmann sold farm implements manufactured by WFE at three dealerships in Illinois. The Dealership Agreements were terminated for the Columbia dealership in August, 1983 and for the Red Bud and Waterloo dealerships in June, 1984. In accordance with the Dealership Agreement and WFE's instructions, Brinkmann segregated the Inventory by part number, packed it in bags with identification tags and returned it to WFE. On March 11, 1985, WFE sent Brinkmann two credit memoranda for the Inventory WFE received from Brinkmann (Stipulation Exhibits D-1 and D-2). After offsets and transfers WFE owed Brinkmann $157,-985.51. Brinkmann did not file a financing statement or take any measures to reserve title to the Inventory pursuant to the Illinois Uniform Commercial Code (Ill.Rev.Stat. ch. 26, ¶ 1-101 *et seq.* (1985); hereinafter, "UCC").

On May 22, 1985, an involuntary bankruptcy petition was filed against WFE in the United States Bankruptcy Court for the District of Kansas. The case was subsequently converted to a voluntary Chapter 11 proceeding on June 5, 1985 and venue was changed to the United States Bankruptcy Court for the Northern District of Illinois. WFE has continued to operate its business as a debtor in possession pursuant to Sections 1101 and 1107 of the Bankruptcy Code (11 U.S.C. §§ 1101, 1107).

BWAC has provided secured financing for WFE's operations. Pursuant to various financing and security agreements, WFE has granted BWAC a security interest in WFE's parts inventory. BWAC asserts that it has perfected its security interest by filing financing statements with the Illinois Secretary of State. (See Affidavit of Thomas White, Exhibit A to BWAC's Memorandum in Opposition to Motion for Summary Judgment).

Brinkmann has never received a payment for the Inventory.

In Count I of his four count adversary complaint, Brinkmann asserts that pursuant to the title retention provisions of the Farm Act he holds title to the Inventory until such time as WFE pays for the Inventory. In Count II, Brinkmann asserts that under the provisions of the Dealership Agreement, WFE as franchisor owes him, as franchisee, certain fiduciary duties and therefore an implied trust exists in the Inventory. In Count III, Brinkmann asserts that because WFE holds the Inventory for his benefit, this Court should impose a constructive trust in the Inventory in his favor. In Count IV, Brinkmann claims that BWAC's alleged security interest could not have attached to the Inventory because when WFE granted BWAC a security interest, WFE had no rights in the Inventory as required by Section 9-203 of the UCC (Ill.Rev.Stat. ch. 26, ¶ 9-203 (1985)).

It is the contention of WFE that according to the UCC, Brinkmann has an unperfected security interest in the Inventory which WFE, as debtor in possession, can

avoid pursuant to Section 544 of the Bankruptcy Code (11 U.S.C. § 544). BWAC asserts that because it has perfected its security interest in the Inventory, its rights in the Inventory are superior to those of Brinkmann.

For the reasons stated below, the Court finds and concludes that the provisions of the Farm Act do not supercede the UCC and that Brinkmann holds no more than an unperfected security interest in the Inventory. The Court further finds and concludes that WFE does not hold the Inventory in trust for Brinkmann, nor should a constructive trust be imposed on the Inventory in Brinkmann's favor. Brinkmann's motion for summary judgment is denied and WFE's cross motion for summary judgment will be granted.

Counts I and IV: The Farm Act and the Uniform Commercial Code

Brinkmann bases his claim to all right, title and interest in the Inventory on the title retention provisions of the Farm Act which states in relevant part:

1503. Franchise termination—Repurchase of inventory

§ 3. Whenever any retailer enters into a franchise agreement, evidenced by a contract, with a wholesaler, manufacturer or distributor wherein the retailer agrees to maintain an inventory and the contract is terminated by wholesaler, manufacturer, distributor, or retailer, then the retailer may require the repurchase of the inventory as provided for in this Act. If the retailer has any outstanding debts to the wholesaler, manufacturer or distributor then the repurchase amount may be credited to the retailer's account.

1504. Repurchase of inventory—Price—Transfer of title.

§ 4. (1) The wholesaler, manufacturer or distributor shall repurchase that inventory previously purchased from him and held by the retailer at the date of termination of the contract. The wholesaler, manufacturer or distributor shall pay 100% of the net cost of all new, unsold, undamaged and complete farm implements, farm machinery, attachments and accessories ...

(2) *Upon payment of the repurchase amount to the retailer, the title and right of possession to the repurchased inventory shall transfer to the wholesaler, manufacturer or distributor* (emphasis added).

Ill.Rev.Stat. ch. 5, ¶¶ 1503, 1504 (1986).

The Dealership Agreement states in pertinent part:

D. 3. Repurchase on Termination

(a) Complete Machines and Attachments
Upon termination of this Contract, the Company [WFE] agrees to repurchase and the Dealer [Brinkmann] agrees to resell ... to the Company all new, current, unused and salable complete machines and attachments ... the Company will credit the Dealer's account, the net prices ... at which they have been charged to Dealer....

\* \* \* \* \* \*

(c) Repair Parts
Upon termination of this Contract, the Company agrees to repurchase and the Dealer agrees to resell ... to the Company those parts purchased from the Company hereunder then on hand unsold, which are in the Company's opinion new and salable....

Dealer Sales and Service Contract of 8, 9; Exhibit A to the Stipulation of Facts of Paul Brinkmann and White Farm Equipment Company.

The Farm Act provides that upon termination of the dealership franchise, the dealer is to return unsold inventory to the manufacturer. When the dealer receives payment for the returned inventory, the title transfers to the manufacturer. The title retention provisions are included in the statute to protect farm implement dealers in recent years when the farm economy has been depressed and unstable.

If the Farm Act were applied solely to Brinkmann as franchisee and WFE as franchisor, the result would be clear. Because WFE has yet to pay Brinkmann for the Inventory, title would remain in Brink-

mann. However, WFE has filed for bankruptcy relief, and this Court must consider the rights of the parties under the Bankruptcy Code as well as the rights of competing creditors. The title retention provision purports to vest title in Brinkmann regardless of whether Brinkmann gives notice of his interest in the manner provided by the UCC. The Farm Act conflicts with the UCC and attempts to create a secret lien in the farm implement dealer's favor.

Under the UCC, Brinkmann has at most a security interest in the Inventory which is not perfected against the claims of other secured creditors.

Section 2-401 of the UCC states:

Each provision of this Article ... applies irrespective of title to the goods except where the provision refers to such title. Insofar as situations are not covered by the other provisions of this Article and matters concerning title become material the following rules apply:

(1) ... Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest. Subject to these provisions and to the provisions of the Article on Secured Transactions (Article 9), title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.

Ill.Rev.Stat. ch. 26, ¶ 2-401 (1985).

Section 1-201(37) also states:

'Security interest' means an interest in personal property or fixtures which secures payment or performance of an obligation. The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer (Section 2-401) is limited in effect to a reservation of a 'security interest'....

Ill.Rev.Stat. ch. 26, ¶ 1-201(37) (1985).

Section 9-202 also states that each provision of Article 9 "with regard to rights, obligations and remedies applies whether title to collateral is in the secured party or in the debtor." (Ill.Rev.Stat. ch. 26, ¶ 9-202 (1985)). Thus, the Farm Act's title retention provision is not determinative of the parties' competing interests in the Inventory. Rather the parties' rights will be determined by evaluating the validity and extent of security interests pursuant to the UCC. *See U.I.P. Engineered Products Corp.*, 43 B.R. 480, 482 (N.D.Ill.1984) (title retention agreement created a security interest under the Illinois UCC).

■ Brinkmann has retained a security interest in the Inventory. However, that security interest is not perfected against the claims of third parties as Brinkmann has not filed the necessary financing statement as required by Section 9-301. Thus, Brinkmann's interest is not superior to that of any third party creditor who has a perfected security interest in the Inventory.

■ WFE correctly states that as debtor in possession it may avoid Brinkmann's unperfected security interest in the Inventory pursuant to Section 544 of the Bankruptcy Code. (11 U.S.C. § 544.) *See In the Matter of Schmaling*, 783 F.2d 680 (7th Cir. 1986).

Brinkmann contends that the title retention provisions of the Farm Act and the Dealership Agreement supercede Section 2-401 of the UCC. "Absolute title is a property interest superior to that of a secured creditor or a bankruptcy trustee". Brinkmann also notes that such title retention provisions have been held effective against innocent third party creditors. (Brinkmann's Memorandum in support of motion for summary judgment at 8, 9, citing *In re Denalco*, 51 B.R. 77, 81 (Bankr.N.D.Ill.1985); *United States v. Ansonia Brass and Copper Co.*, 218 U.S. 452, 31 S.Ct. 49, 54 L.Ed. 1107 (1910); *United States v. Digital Products Co.*, 624 F.2d 690 (5th Cir.1980); *In re Double H Products*, 462 F.2d 52 (3d Cir.1972), *United States v. American Pouch Foods*, 30 B.R. 1015 (N.D.Ill.1983); *In re Verco Industries*, 27 B.R. 615 (Bankr.App.Pan. 9th Cir. 1982); *In re Economy Cab and Tool Co., Inc.*, 47 B.R. 708 (Bankr.D.Minn.1985)).

Counsel for Brinkmann has misapplied the rulings in the above cited cases. All involved defense procurement contracts

which contained title-vesting provisions in favor of the federal government. In finding that a title retention provision preserved the federal government's unrecorded interest in goods, Judge Fairchild of the Seventh Circuit Court of Appeals explained:

> [T]here would be considerable reason to treat provisions like these, if found in a private contract, as creating a security interest. On the other hand, this is a contract for the procurement of materials for national defense, with its terms spelled out in the regulations of the Defense Department, 32 C.F.R. § 163.79, and a history suggesting a substantial reason for very literal interpretation of the title vesting language.
>
> Since 1823 there has been a federal statute prohibiting advances of public money and payment on contracts in excess of the value of service rendered or goods delivered previously to payment. 3 Stat. 723, Rev.Stat. § 3648 (1873), 31 U.S.C. § 529 (1981), 31 U.S.C. § 3324 (1983) ... this statute is not violated by payment previous to delivery if title to the portion paid for has vested in the Government at the time of payment, or if the articles are then impressed with a valid lien in favor of the Government.

*In re American Pouch Foods, Inc.,* 769 F.2d 1190, 1193–94 (7th Cir.1985) (U.S.App. pndg.).

The case at bar does not involve defense procurement contracts or national security, nor are there other circumstances which justify excepting the transaction in question from the provisions of the UCC.

Because the Farm Act was enacted in 1983, several years subsequent to the adoption of the Illinois UCC, Brinkmann asserts that the Farm Act, as the later enacted statute, should be determinative of the parties' rights. Brinkmann also asserts that because the Farm Act deals specifically with farm implement dealers and manufacturers, it creates an exception to the UCC, which is a more general statute.

■ The Court does not find Brinkmann's arguments persuasive. In most in-

stances, repeal of a statute by implication is not favored. *United States v. Will,* 449 U.S. 200, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980). Section 1–104 of the UCC states:

> This Act being a general act intended as a unified coverage of its subject matter, no part of it shall be deemed to be impliedly repealed by subsequent legislation if such construction can reasonably be avoided.

Ill.Rev.Stat. ch. 26, ¶ 1–104 (1985).

■ In the instant case there is no indication that the Farm Act was intended to pre-empt the provisions of the UCC. In fact, the Farm Act specifically states:

> 6. The provisions of this Act shall not be construed to affect in any way any security interest which any financial institution, person, wholesaler, manufacturer or distributor may have in the inventory of the retailer, but any repurchase hereunder shall not be subject to the provisions of Article 6 of the Uniform Commercial Code.

Ill.Rev.Stat. ch. 5, ¶ 1506 (1985).

The Farm Act expressly repeals only Article 6 of the UCC. In the absence of explicit language stating that the Farm Act pre-empts Article 2 and Article 9, this Court finds that the UCC governs the parties' competing interests in the Inventory. *See Jackson v. H. Frank Olds, Inc.,* 65 Ill.App.3d 571, 22 Ill.Dec. 230, 382 N.E.2d 550 (1978) (warranty provisions of the UCC were not impliedly repealed by the later enacted Illinois Consumer Fraud Act).

■ In Count IV of the complaint, Brinkmann asserts that BWAC's security interest never attached to the Inventory because WFE lacked rights in the Inventory as required by Section 9–203 of the UCC, and therefore, WFE could not have granted BWAC a security interest in the Inventory.

■ At this juncture, the Court declines to determine the validity of BWAC's alleged perfected security interests in the Inventory. However, if BWAC's security interests are properly perfected as BWAC asserts, Brinkmann's argument must fall.

Brinkmann took no steps to perfect his interest in the Inventory after he delivered possession to WFE. Absent the filing of a financing statement, there was no practical and reliable method by which BWAC or other third parties could determine that the Inventory was encumbered. Although mere possession of goods by a debtor does not establish rights in the collateral, innocent third party creditors are entitled to rely on the public record. See *Thrift, Incorporated v. A.D.E., Inc.*, 454 N.E.2d 878, 37 UCC Rep. 545 (Ind.Ct.App. 1983).

If Brinkmann had intended to retain title to the Inventory after delivery to WFE, Brinkmann could have reserved a purchase money security interest pursuant to UCC Sections 9–107 and 9–312. *See Evans Products Co. v. Jorgensen*, 3 UCC Rep. 1099, 245 Or. 362, 421 P.2d 978 (1966).

The application of the UCC produces a harsh result. However, to validate Brinkmann's claim to title in the Inventory would be to uphold a secret lien. "A fundamental policy of Article 9 of the UCC is to discourage secret liens ... A contrary decision would undercut this fundamental policy". *Thrift*, 454 N.E.2d at 882, 37 UCC Rep. at 550 (citation omitted).

Counts II and III: Implied and Constructive Trust

 In Count II of the complaint, Brinkmann asks that the Court find that an implied trust exists between WFE and Brinkmann. An implied or constructive trust "arises by operation of law when circumstances of a transaction are such that the court finds it inequitable for the legal owner to enjoy the beneficial interest". *Sadacca v. Monhart*, 128 Ill.App.3d 250, 83 Ill.Dec. 463, 470 N.E.2d 589 (1984). An implied or resulting trust arises from the presumed intent of the parties. *Price v. State*, 79 Ill.App.3d 143, 34 Ill.Dec. 690, 398 N.E.2d 365 (1979). Brinkmann claims that implicit in the Dealership Agreement and in the Farm Act is the expectation that WFE, as fiduciary for Brinkmann, holds the Inventory for Brinkmann's benefit.

Brinkmann relies on the Eighth Circuit Court of Appeals case *Arnott v. American Oil Co.*, 609 F.2d 873 (8th Cir.1979), *cert. denied*, 446 U.S. 918, 100 S.Ct. 1852, 64 L.Ed.2d 272 (1980) to support its contention that WFE owes Brinkmann a fiduciary duty pursuant to the Dealership Agreement. The *Arnott* Court determined that a franchisor owes a franchisee a fiduciary duty and may not terminate the franchisee's lease without good cause. In a subsequent case, the Court of Appeals of the Eighth Circuit stated that the term "fiduciary duty" as used in *Arnott* did not impose on a franchisor all the duties and responsibilities of a fiduciary. Rather, a franchisor is expected to demonstrate good faith and fair dealing when terminating a contract with a franchisee. *Bain v. Champlin Petroleum Co.*, 692 F.2d 43 (8th Cir.1982).

In a Seventh Circuit case, *Murphy v. White Hen Pantry Co.*, 691 F.2d 350 (7th Cir.1982), the Court refused to impose fiduciary obligations on franchisors. In distinguishing the *Arnott* case, the Court noted that "nothing more than well-accepted contract principles were thereby imposed". *Id.* at 355.

The facts as presented to the Court do not indicate that WFE owed Brinkmann a fiduciary obligation. Nor is there evidence indicating that WFE breached the terms of the Dealership Agreement in such a way that would warrant the imposition of an implied trust in the Inventory in Brinkmann's favor.

 In Count III of the adversary complaint, Brinkmann requests that the Court impose a constructive trust on the Inventory or the proceeds thereof. A constructive trust may be imposed where a fiduciary obligation has been breached or where fraud has been committed which results in the unjust enrichment of the breaching party. *Price v. State of Illinois*, 79 Ill.App.3d 143, 148, 34 Ill.Dec. 690, 398 N.E.2d 365 (1979).

 Brinkmann alleges that WFE, by commingling the Inventory with other inventory, has breached its fiduciary obligations owed to Brinkmann under the Deal-

ership Agreement and the Farm Act. Yet Brinkmann cites no section of the Farm Act or the Dealership Agreement which requires WFE to segregate the Inventory returned to WFE by its dealers.

▉ Brinkmann has presented no evidence of fraud on the part of WFE and the Court has found heretofore that WFE owes no fiduciary obligations to Brinkmann, the breach of which would warrant the imposition of a constructive trust.

The Court finds and concludes that the Illinois Uniform Commercial Code governs the rights of the parties in the Inventory, that the Illinois Farm Equipment Fair Dealership Law's title retention provisions do not pre-empt conflicting provisions of the Illinois Uniform Commercial Code, and further, that the Illinois Farm Equipment Fair Dealership Law does not impliedly repeal the Illinois Uniform Commercial Code.

The Court further finds that Brinkmann retains an unperfected security interest in the farm implement Inventory which it returned to the White Farm Equipment Company's possession subsequent to the termination of its franchise agreement.

The Court further finds that pursuant to the Illinois Farm Equipment Fair Dealership Law, the Dealership Sales and Service Contract, and the evidence presented, there are insufficient grounds to justify the imposition of an implied or constructive trust in the Inventory in Brinkmann's favor.

NOW THEREFORE IT IS ORDERED for the above-stated reasons, that the motion for summary judgment of the creditor, Paul Brinkmann, on his adversary complaint is hereby denied.

IT IS FURTHER ORDERED that the cross-motion for summary judgment of the debtor, White Farm Equipment Company, is hereby granted.

### On Motion for Reconsideration

This cause is before the Court on the motion of the creditor, Paul Brinkmann ("Brinkmann") for reconsideration of this Court's June 26, 1986 Memorandum and Order in the above-captioned adversary proceeding. In the Order, this Court determined that the Illinois Farm Equipment Fair Dealership Law (Ill.Rev.Stat. ch. 5, ¶ 1501 *et seq.* (1985)) (hereinafter "Farm Act") does not elevate Brinkmann's alleged interest in certain farm equipment inventory above the interests of other creditors whose security interests are perfected. The Court denied Brinkmann relief on all four counts of his complaint against the debtor, White Farm Equipment Company ("WFE") and now denies Brinkmann's motion for reconsideration and rehearing.

Brinkmann asserts that the Court failed to discuss the "specific effect" of the title-retention provision of the Farm Act in the June 26, 1986 Memorandum and Order. However, the Court discusses at length why the Illinois Uniform Commercial Code ("UCC") was not impliedly repealed by the passage of the Farm Act. Having determined that the UCC rather than the Farm Act is dispositive of the parties' rights, the Court need not expound further on the provisions of the Farm Act. Any further discussion of the specific effect of the title-retention provisions of the Farm Act would add nothing to the previous Memorandum.

▉ In his supporting memoranda, Brinkmann reargues legal issues already raised in the initial pleadings. Brinkmann also raises slightly different arguments which cannot be raised now for the first time in support of a motion for reconsideration. As Judge Shadur has stated:

> Motions to reconsider serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence ... Such motions cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during pendency of the summary judgment motion ... Nor should a motion for reconsideration serve as the occasion to tender new legal theories for the first time.

*Keene Corp. v. International Fidelity Ins. Co.*, 561 F.Supp. 656, 665–66 (N.D.Ill.1982) (citations omitted), *aff'd*, 736 F.2d 388 (7th Cir.1984).

 Brinkmann submitted as newly discovered evidence, an affidavit of a Brinkmann's parts manager, Robert Mehrtens that purportedly shows that the Brinkmann inventory returned to WFE's possession is identifiable, thereby providing Brinkmann a basis for equitable relief. (*See* affidavit of Roger Mehrtens, Brinkmann's Memorandum in Support of Motion.) Brinkmann's excuse for not supplying Mehrten's affidavit with its earlier briefs is that "employees of Brinkmann were so unsophisticated they were unaware that such facts were relevant". (Brinkmann's Reply Memorandum at 11.) Brinkmann's employees may not be sophisticated but its lawyers are.

WFE has responded to Mehrten's affidavit with an affidavit of Bill Meyers, a WFE Central Parts Warehouse Manager. (*See* Affidavit of Bill Meyers, WFE's Memorandum in Opposition.) Meyers asserts that Mehrtens has incorrectly described shipping procedures and has confused two different types of parts identification tickets. Brinkmann has not responded to Meyer's affidavit. Thus it is unclear to the Court whether any of the Brinkmann inventory is identifiable as Brinkmann asserts.

Assuming there were grounds for granting Brinkmann equitable relief, the affidavit of Robert L. Terry, Chief Executive Officer of WFE, demonstrates the absurdity of granting relief on the basis that Brinkmann inventory could be identified at WFE warehouses. (*See* Affidavit of Robert L. Terry, Response of WFE in Opposition to Motion to Reconsider.) Terry states that WFE sells parts from nine warehouses. Upon receiving a returned part, WFE removes the dealer's identification tag before commingling the part with other like parts. WFE has on hand 144,000 different kinds of parts and their total number is estimated to exceed four million. Even if identification tags or handwritten numbers remained on returned parts, it would be highly impractical if not impossible to identify those parts in WFE warehouses.

The Court finds therefore, that the affidavits submitted by Brinkmann and WFE do not provide a basis upon which the June 26, 1986 Memorandum and Order should be altered.

NOW THEREFORE IT IS ORDERED that the motion of Paul Brinkmann for reconsideration of the June 26, 1986 Memorandum and Order and for a rehearing is hereby denied.